**Jimmie L. WEEKLEY, Appellant,**

v.

**Jimmy JONES, Appellee.**

**No. 89–2909.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 8, 1990.

Decided March 4, 1991.

Robert A. Useted, St. Louis, Mo., for appellant.

William J. Bryan, IV, Jefferson City, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and STUART,[*] Senior District Judge.

HENLEY, Senior Circuit Judge.

Jimmie Lee Weekley appeals the district court's denial of his petition for writ of habeas corpus. He claims: (1) his jury was unconstitutional under *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) (Missouri system of juror selection systematically excludes women in violation of the sixth amendment); (2) his counsel was ineffective for failing to raise the *Duren* issue at trial or as soon thereafter as practicable; and (3) his counsel was ineffective for advising him to withdraw a not guilty by reason of insanity plea given conflicting evidence of competency at the time the plea was changed and significant evidence of his insanity both at the time of the trial and the time of the crime. Appellee objects to appellant being granted an extension of time within which to file his notice of appeal in the present action.

Based on the record before us, we cannot conclude the district court abused its discretion in granting appellant an extension of time to file his notice of appeal. We otherwise reverse the district court and remand this case for further consideration of the jury and ineffective assistance of counsel issues.

## FACTS

Appellant was convicted of second degree murder for killing his estranged wife with a shotgun, and was sentenced to life in prison. After the killing, which evidently took place in a house trailer, appellant also shot himself, inflicting extensive physical injuries to the head and serious nerve and brain damage. Intelligence quotient tests reveal appellant was, after the shooting, borderline mentally retarded (IQ as low as 71).

Appellant had at least three psychiatric examinations performed on him after the shooting. The first, by Dr. Corales, was about eighteen months before trial. The doctor concluded that appellant was incompetent to stand trial, presently suffered from a mental disease (paranoid-type schizophrenia), but evidence was inconclusive on whether appellant suffered from the disease at the time of the crime. Approximately two months later, Dr. Parwatikar performed an examination and concluded appellant was competent to stand trial, was presently suffering from a mental disease, and was legally insane at the time of the crime. Approximately four months after

* The Honorable William C. Stuart, United States Senior District Judge for the Southern District of Iowa, sitting by designation.

trial, a third examination was performed by Dr. Bratkowski. Only partial excerpts of his report appear in the record. Based on this report, appellant was suffering from serious mental disease at the time of the examination.

All the doctors' reports note a history of personal and family psychiatric problems, including substantial medication and multiple instances of hospitalization. These same evaluations concur in their diagnoses that appellant has paranoid-type schizophrenia including paranoid ideation, hallucinations, delusions, violent behavior and depression (including some suicidal tendencies). All reports make mention of appellant's near borderline retardation, at least much of which was the result of his self-inflicted wounds.

A pre-trial hearing to determine competence to stand trial and to enter a change of plea was held. In determining competence, the trial court referred to Dr. Parwatikar's report, without any reference to Dr. Corales' report, and concluded there was no dispute regarding competence and that the "doctors" agreed that appellant was competent. Tr. 111. The trial court asked appellant whether he had been able to assist his lawyer, to which appellant responded, "[y]eah, as far as I could." Tr. 112. Based on that response and the belief that there were harmonious doctors' reports, the trial court held: "[w]e'll enter the Order finding that the Defendant does have the capacity to know and understand the nature of the complaint." Tr. 113.

From this exchange, the trial court proceeded to address the change in plea from not guilty by reason of insanity ("insanity plea") to not guilty. The trial court questioned appellant, his new wife, and counsel regarding the change in plea. In response to the trial court's first inquiry as to appellant's desire to change his plea, trial counsel interrupted and prevented appellant from answering. Tr. 113. Counsel then, curiously, proceeded to explain why appellant and his spouse *wanted* to plead insanity, which fact appellant verbally affirmed.

Additional exchanges were had between the bench and counsel, including an explanation of how the withdrawal of the insanity plea would result in a plea of not guilty to second degree murder. The court then asked whether this is what appellant wished to do, to which appellant responded, "[w]ell ... I understand what you mean, but I don't know what to say. I actually don't." Tr. 115.

Appellant's new wife, a registered nurse, was also questioned. When asked whether, as a result of discussions regarding her husband's lack of recollection of the crime and his own serious injuries, a change in plea had been contemplated, she responded, "[f]or whatever reason." Tr. 116. The trial court then asked her whether she thought the change in plea was in her husband's best interest. She responded, "I don't know ... I do bedpans, you do lawbooks, okay?" Tr. 116.

During these discussions of appellant's plea alternatives, the prosecutor pointed out and the trial court confirmed that under Missouri law, appellant could enter both a not guilty and an insanity plea. Tr. 117–18. To this, trial counsel responded, "[w]ell, the only reason we're [referring to counsel] here is we thought we were trying him [Weekley] on the grounds that he was Not Guilty. That's what you hired us for." Tr. 118. Trial counsel then insisted the court permit him to accept full responsibility for his client's change in plea. From the point of that statement, the trial court proceeded on the assumption that appellant was making an informed and voluntary change in plea. The trial court held, after interruption and several incoherent remarks by appellant, Tr. 118–19, that the record would reflect the change in plea.

The trial record shows that counsel principally relied on appellant's lack of memory and the lack of any eyewitnesses to support the claim of not guilty to the charged offense. However, the record also reflects that the jury was presented with evidence that neighbors heard gun shots, saw only appellant and the victim in the house trailer immediately thereafter, the victim died of a shotgun wound, appellant himself was covered in blood at the scene of the crime and apparently suffered from a self-inflicted

shotgun wound, and appellant claimed he did not know what had happened but that he guessed he shot her. In short, there was little doubt appellant had killed the victim. The only defense witness was appellant.

On direct appeal, the Missouri Court of Appeals affirmed appellant's conviction holding the circuit court did not abuse its discretion by (1) allowing the prosecution to strike a male juror for cause based on the juror's doubts he could properly perform his duty; (2) not issuing the most recent form of jury instruction on credibility of witnesses where the only difference was the use of an indefinite masculine pronoun; (3) permitting extensive cross-examination of Weekley on the issue of blackout; and (4) admitting black and white photographs of the crime scene. *State v. Weekley,* 621 S.W.2d 256 (Mo.1981).

Appellant then sought post-conviction relief which was denied twice. The first action generally alleged ineffective assistance of counsel relating to the insanity plea, which claim was determined to be meritless. This determination was affirmed on appeal. The second action raised the jury issues. The Missouri circuit court stated it believed such claims were procedurally barred, but the court apparently denied the claims on other grounds as meritless. The determination was summarily affirmed by the court of appeals without comment in a per curiam opinion. *Weekley v. State,* 694 S.W.2d 267 (Mo.Ct.App.1985). Appellant then petitioned for federal relief.

In the Review and Recommendation adopted by the district court, the federal magistrate recommended that habeas relief be denied. The magistrate determined that appellant was procedurally barred from raising the constitutional jury issue because appellant did not object at trial, did not raise the issue in his first post-conviction relief action and, apparently, such claim was treated as procedurally barred in the second state action. The magistrate ruled there was no showing of cause and prejudice sufficient to overcome the procedural default.

The magistrate then discussed the question whether counsel was ineffective for withdrawing the insanity plea. The magistrate primarily relied on the circuit court's findings in appellant's first state post-conviction relief action. That court determined the evidence of appellant's competency was clear based on two medical reports. The magistrate deferred to the state court and apparently concluded that, since appellant was competent, he was legally capable of changing his plea. The magistrate did not discuss evidence of appellant's insanity.

We review a district court's decision to grant a timely filed extension to file a notice of appeal under an abuse of discretion standard. *Vogelsang v. Patterson Dental Co.,* 904 F.2d 427, 431 (8th Cir. 1990). We review determinations regarding a petitioner's entitlement to a writ of habeas corpus as a mixed question of fact and law, reviewing any factual findings under a clearly erroneous standard, recognizing a presumption of correctness regarding the factual findings of state courts, and reviewing issues of law de novo. *See Couch v. Trickey,* 892 F.2d 1338 (8th Cir. 1989) (citing *Laws v. Armontrout,* 863 F.2d 1377 (8th Cir.1988) (en banc), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989)). In particular, we review ineffective assistance of counsel claims based on *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

LATE NOTICE OF APPEAL

After habeas relief was denied, appellant requested an extension of time to file his notice of appeal on August 10, 1989. The district court's order was dated July 10, 1989. Appellee argues that this time period was more than the thirty days allowed to file notice of appeal, thus precluding any extension. *See* Fed.R.App.P. 4(a)(1). Reviewing the district court docket sheets, we note that the order entry date, the date used for purposes of running the time limits for filing the notice of appeal, is July 11, 1989. We begin counting the next day, and an appellant has thirty days beginning then to file a notice of appeal.

Fed.R.App.P. 26(a). Using this method of counting, we conclude appellant filed the request for extension on the thirtieth day.

■ Appellee also argues the district court abused its discretion by granting the extension because good cause was not shown for the request. A district court may grant extensions of time to file a notice of appeal. Fed.R.App.P. 4(a)(5); 28 U.S.C. § 2107; *cf. Firstier Mortgage Co. v. Investors Mortgage Ins. Co.,* — U.S. ——, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991) (policy behind liberal application of Rule 4). The record before us does not specifically state the basis on which the extension was granted. We note evidence in the record which shows appellant filed the request pro se, while in prison, was at the time on medication, and apparently still suffered from borderline mental retardation and paranoid schizophrenia. The appellee merely asserts there was no good cause.

Our own circuit rules express our view that it is not inappropriate to give special consideration to pro se appellants regarding their notices of appeal. *See* 8th Cir.R. 26A. We have also held that excusable neglect is a basis for extending the time for filing, including instances where the interests of justice so dictate. *Benoist v. Brotherhood of Locomotive Eng'rs,* 555 F.2d 671, 672 (8th Cir.1977). Given we find at least some evidence in the record suggesting good cause or excusable neglect, and weighed against appellee's mere naked assertion of error, we cannot conclude the district court abused its discretion by granting the extension.

JURY ISSUES

■ Appellant's first claim of error is the trial court's use of an unconstitutional jury violative of the *Duren* decision. In *Duren,* the Supreme Court held that Missouri's system of selecting jurors which permitted women to opt out of jury duty without cause resulted in a violation of the fair cross section requirement of the sixth amendment. The decision was rendered in January of 1979. Defendant was arrested in June of 1978 and the trial was held in March of 1980. Appellant alleges that the jury pool selection procedure used in his trial was the same as that outlawed by *Duren,* but the record is inconclusive on this point. Appellant argues that his jury was unconstitutional, selected in violation of *Duren,* and his attorney was ineffective for not raising the issue.

The magistrate considered appellant's claim procedurally barred based on waiver of claim under Missouri law. *See State v. Thompson,* 627 S.W.2d 298 (Mo.1982) (en banc). The record indicates that appellant did not object to the jury at trial, on appeal, or in his first state post-conviction relief action. In his second state post-conviction relief action, the appellant raised the jury issues but was denied relief, apparently on procedural grounds. However, appellant suggests and the record supports that the Missouri circuit court may not have decided on purely procedural grounds. The circuit court was summarily affirmed on appeal without comment. The magistrate apparently did not consider the nature of the circuit court's ruling in the second state action or the implications of the summary affirmance.

In habeas actions, if claims are not adequately presented first to the state courts, federal courts generally cannot review them. *McKinnon v. Lockhart,* 921 F.2d 830 (8th Cir.1990); *Tippitt v. Lockhart,* 903 F.2d 552, 554 (8th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 301, 112 L.Ed.2d 254 (1990). But, if the circuit court relied even in part on a substantive as opposed to procedural ground for denying relief, then there may not have been a failure by appellant to present his claim to the state court, and thus no procedural bar to federal review.

The magistrate also ruled there was no cause or prejudice shown to mitigate against enforcing the procedural bar. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The magistrate noted, however, that ineffective assistance of counsel may be cause for procedural default. *See Walker v. Lockhart,* 852 F.2d 379, 381 (8th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1551, 103 L.Ed.2d 854 (1989) ("clearly, ineffective assistance of counsel provides cause for pro-

cedural default") (citing *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

As we stated, more than a year elapsed from the time of the *Duren* opinion to the time of trial. The magistrate, relying on *Benson v. Armontrout*, 767 F.2d 454 (8th Cir.1985), and *Benson v. State*, 611 S.W.2d 538 (Mo.Ct.App.1980), held as a matter of law that trial counsel was not ineffective for not raising the jury issue. These cases may be distinguishable, however, because they involved trials occurring before counsel could have been aware of the *Duren* decision. If the jury procedures used at appellant's trial were in fact in violation of *Duren*, appellant's trial counsel may have been ineffective for not raising the objection at trial if competent counsel should have known of the decision.

Also, since the magistrate reviewed this case, we have held that ineffective assistance of post-conviction counsel may in some cases amount to cause. *Simmons v. Lockhart*, 915 F.2d 372 (8th Cir.1990). Failure to raise the jury issue on direct appeal or in the first post-conviction relief action may be cause, regardless of whether failure to raise it at trial was not.

If cause is found, then prejudice must next be considered. Failing to find cause, the magistrate performed no significant analysis of the prejudice issue. If a fair cross section of women were included in appellant's jury pool or if his actual jury was not unconstitutional, the *Duren* claim may fail for lack of prejudice. *See Haley v. Armontrout*, 924 F.2d 735 (8th Cir.1991). In the record we found evidence that five or six members of appellant's twelve person jury were female, but we are uncertain of the composition of his jury pool. In any event, these and other facts may affect the finding of prejudice in the analysis of procedural bar and ineffective assistance of counsel.

INSANITY PLEA

In addition to the ineffective assistance claim raised in the jury question context, appellant also claims his trial counsel was ineffective for recommending the change in plea. We will consider the incompetence and insanity components of this claim separately.

A. Incompetence

Although appellant's competence may not be before us directly, the state courts and federal district court rely on the trial court's finding of appellant's competence to stand trial to support the propriety of the change in plea and, thus, the absence of ineffective assistance of counsel. In short, it is said that if appellant was competent at trial, then he was capable of making an informed and voluntary change in his plea and counsel was not ineffective for allowing him to do so.

There is conflicting expert evidence, however, regarding appellant's competence to stand trial which apparently eluded all the courts before us. Dr. Parwatikar believed appellant was competent to stand trial; Dr. Corales did not. The exchanges we noted in the trial transcript may also suggest some questions about appellant's competence to stand trial. Dr. Parwatikar's report, on which the Missouri trial court relied, while concluding appellant was competent, contained much discussion that might be viewed as contrary to that conclusion.

The Missouri trial court stated all evidence was in support of a finding of competence and found that appellant knew and understood the nature of the complaint. A defendant is not competent to be tried unless he is capable of rationally consulting with counsel regarding his defense and capable of rationally understanding the nature and character of the proceedings against him. *See Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Davis v. Wyrick*, 766 F.2d 1197 (8th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 322 (1986). The trial court's findings and the scope of its ruling may fall short of the standard.

As a result, we feel the district court needs to take a second look at its conclusion regarding trial counsel's ineffectiveness in the context of the issues we have raised regarding competence to stand trial. We also refer the district court to our recent decision in *Wright v. Lockhart*, 914

F.2d 1093 (8th Cir.1990) (competency objection not perfected on direct appeal from state trial court cannot be raised for first time in petition for federal relief, but there may be exceptions), which may suggest additional issues on remand.

## B. Insanity

All three doctor reports agree that appellant suffered from a mental disease or defect at the time of examination. Furthermore, Dr. Parwatikar's report unequivocally states that "at the time of the alleged criminal conduct he did not know or appreciate the nature, quality or wrongfulness of his conduct and, thus, was incapable of conforming his conduct to the requirements of the law.... [H]e [should] be considered not guilty by reason of insanity...." In the face of this strong evidence of insanity, both at the time of the crime and the time of trial, and based on the exchanges at the hearing we quoted, the trial court found appellant *competent* to change his plea and trial counsel insisted on abandoning appellant's insanity plea.

Competence to stand trial and insanity at time of trial may not be completely congruent issues, but it seems that if findings made at about the same time are contrary to one another, any such determination of one issue may call into question the other. One wonders whether a person who is unable to appreciate the nature, quality or wrongfulness of his conduct can simultaneously be able to rationally assist in his own defense and understand the nature and the character of the proceedings against him. In any event, the district court did not evaluate the evidence of insanity at time of trial and what, if any effect, it would have on judging counsel's ineffectiveness in requesting a change in plea.

When considering the insanity evidence, the district court should also consider separately whether counsel may have been ineffective for recommending a plea of not guilty, given his plan to base such defense on the testimony of appellant, *i.e.*, a legally insane witness, and his lack of recollection of the criminal episode. In addition, given the witness and police accounts of the crime scene we summarized, the medical evidence of insanity at the time of the crime, and the fact appellant could have entered a *not guilty and* an insanity plea, it may be that appellant's best and only viable defense was insanity. We have held counsel may be found ineffective if he abandons the only viable defense. *See Chambers v. Armontrout*, 885 F.2d 1318, 1322–23 (8th Cir.1989), *aff'd on rehearing*, 907 F.2d 825 (8th Cir.1990) (en banc).

## CONCLUSION

We do not here decide whether appellant had and was prejudiced by an improper jury, whether such claim is procedurally barred, whether appellant was competent at his pre-trial hearing or insane at the time of the crime or the trial, or whether counsel was ineffective in any way. We have only noted additional facts, law and issues we believe need to be addressed by the district court because they may raise important questions in determining whether appellant is entitled to habeas relief.

We therefore reverse and remand this cause without prejudice to any party for whatever additional proceedings the district court may deem necessary, consistent with this opinion, in the exercise of its sound discretion. Such proceedings should address the questions we have raised and any others which need to be raised so that an adequate record may be developed and a proper determination made on the disposition of appellant's petition for a writ of habeas corpus.