**Larry BRANSCOMB, Appellant,**

v.

**Larry NORRIS, Director, Arkansas Department of Correction, Appellee.**

No. 94–1056.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1994.

Decided Feb. 1, 1995.

Dewell Franklin Arey, III, Conway, AR, argued, for appellant.

Oan Warren Reeves, Asst. Atty. Gen., Little Rock, AR, argued, for appellee.

Before MAGILL, Circuit Judge, BEAM, Circuit Judge, and PIERSOL,* District Judge.

PIERSOL, District Judge.

Larry Branscomb, an Arkansas inmate, appeals from the judgment entered by the magistrate judge [1] denying his petition for a writ of habeas corpus under 28 U.S.C.

---

*The HONORABLE LAWRENCE L. PIERSOL, United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable John F. Forster, Jr., United States Magistrate Judge for the Eastern District of Arkansas, who decided the case with the consent of the parties pursuant to 28 U.S.C. § 636(c).

§ 2254. For the reasons discussed below, we affirm.

## I. Facts and Procedural History

Branscomb, a former Chicago resident, visited relatives in Arkansas in mid-August, 1986. On August 15, Branscomb, along with his brother, Earl Branscomb, and a friend, Willie McCoy, looked at a Cadillac for sale in Marvell, Arkansas. Branscomb told his companions that he would rob someone to get the money for the car. He asked them to drop him off near the home of Thomas Morgan in Marianna, Arkansas. McCoy testified at trial that he had seen Branscomb with a pistol on the evening of August 14. Earl Branscomb testified that his brother said he wanted the car and he would "knock somebody off" to get it. Later that day, Morgan was robbed and shot to death in his home. Earl Branscomb testified that his brother called him and told him that the man he robbed had reached for his gun, he had to shoot him, and he wanted to go back to Chicago. Fletcher Wilson testified that Branscomb paid him twelve dollars to drive him to Memphis at 8:30 p.m. on August 15. Earl Branscomb testified that his brother left for Chicago with a silver pistol and a sack of money.

Arkansas authorities issued a warrant for Branscomb's arrest on August 18, 1986. Chicago police officers arrested Branscomb on September 8, and he remained incarcerated in Illinois until December 11, when an Arkansas sheriff's deputy transported him to Arkansas. No conversation relevant to the crime took place during the trip. Two officers questioned Branscomb around 9:30 a.m., on December 12 at the Lee County Jail in Arkansas. One officer advised him of his *Miranda* rights, and Branscomb signed the waiver form. Branscomb did not request an attorney. He then admitted shooting Thomas Morgan, but claimed that he acted in self-defense. The officers confronted Branscomb with discrepancies in his story. Branscomb then admitted that he went into the home to rob Morgan and that he pulled his pistol before Morgan pulled his gun. He admitted shooting Morgan twice and running away.

The court appointed counsel for Branscomb following his first court appearance on a charge of capital felony murder. Branscomb then amended his plea to not guilty and not guilty by reason of insanity. Branscomb and the State negotiated a plea agreement, but at the change of plea hearing, Branscomb asserted his innocence and the state court refused to accept the guilty plea. Branscomb told the court that two of his friends from Chicago, Rico and Chico, had committed the murder. The trial judge subsequently granted a defense motion for a psychiatric examination and ordered an evaluation of Branscomb at the Arkansas State Hospital.

The evaluators based the "Psychosocial Assessment" of the final psychiatric report upon information the evaluators received about the crime from the Lee County Sheriff's Department and upon limited information taken from a questionnaire completed by Branscomb's mother, who had not seen Branscomb in several years. Branscomb claimed he was employed and married at the time of his arrest, but he could not provide addresses or telephone numbers for verification of this information. Evaluators were unable to contact other family members listed by Branscomb's mother.

In an interview with the psychiatrist, Branscomb repeated his statement that his friends, Rico and Chico, committed the crime. Evaluators conducted various psychological and achievement tests. This testing revealed that Branscomb has a full scale I.Q. of 67 and is barely literate, although he claimed to have a high school education and some college credits. The evaluators considered invalid the result of the Minnesota Multiphasic Personality Inventory (MMPI) because Branscomb likely could not read the questions and answered them randomly. The psychiatrist diagnosed mild mental retardation and a mixed personality disorder with antisocial and schizotypal features. He did not find any evidence that Branscomb suffered from major psychosis or depression. He concluded that Branscomb could judge right from wrong, that he was mentally responsible at the time of the crime, and that he was capable of assisting in his defense.

Branscomb's attorneys were not satisfied with this report. They moved for an inde-

pendent psychiatric evaluation at state expense on the grounds that the Arkansas State Hospital report was inadequate and Branscomb had exhibited to his counsel "extreme distrust, paranoia, and flights of fantasies." The trial court denied the motion. A jury subsequently convicted Branscomb of capital felony murder on May 20, 1988. The state judge sentenced Branscomb to life imprisonment without parole.

The Arkansas Supreme Court affirmed the conviction and sentence on July 10, 1989. *Branscomb v. State*, 299 Ark. 482, 774 S.W.2d 426 (1989). On direct appeal, Branscomb raised four issues, two of which are pertinent to this appeal: (1) the state trial court should have granted his request for evaluation by an independent psychiatrist of his choice at state expense, and (2) his statements to police should have been suppressed because he lacked the mental capacity to waive his right to counsel. The Arkansas Supreme Court rejected these arguments on the merits, as did the magistrate judge below.[2] This court issued a certificate of probable cause for appeal and appointed counsel. Branscomb now renews the two issues set out above and raises a new issue regarding his competence to stand trial.

## II. Competency Hearing

■ Branscomb argues for the first time on appeal that his due process rights were violated by the state trial court's failure to conduct an adequate hearing on his competency to stand trial. Branscomb admits that this issue was not expressly raised in the state court proceedings or before the magistrate judge below, but he asserts that the Arkansas Supreme Court essentially considered the issue in deciding that the state trial court did not err in denying his motion for an independent psychiatrist. Thus, he argues that we may consider the claim.

■ We do not agree with Branscomb that the Arkansas Supreme Court considered this issue. Branscomb did not raise as an issue in his brief on direct appeal the trial court's failure to hold a competency hearing, and the Arkansas Supreme Court did not allude to a competency hearing in its opinion. We do not ordinarily consider issues raised for the first time on appeal. *Tramp v. United States*, 978 F.2d 1055, 1056 (8th Cir.1992) (per curiam). Additionally, we agree with the State that Branscomb abused the writ by failing to present the issue first to the state courts and the lower federal court and that Branscomb has not established cause and prejudice to excuse his abuse of the writ. *See Fairchild v. Lockhart*, 979 F.2d 636, 640 (8th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 3051, 125 L.Ed.2d 735 (1993). Nonetheless, we choose to address the merits briefly.

■ Due process requires the trial court to hold a competency hearing *sua sponte* whenever evidence raises a sufficient doubt about the accused's mental competency to stand trial. *Griffin v. Lockhart*, 935 F.2d 926, 929 (8th Cir.1991). While we can describe no precise quantum of proof necessary to establish "sufficient doubt," the trial court should consider evidence of irrational behavior by the accused, the accused's demeanor, and any prior medical opinion as to the mental competency of the accused to stand trial. *Id.* at 930. Additionally, the trial court may consider an express doubt by the accused's attorney, but such doubt alone is not enough to establish sufficient doubt. *Id.* The habeas petitioner has the burden to prove that objective facts known to the trial court raised a sufficient doubt to require a competency hearing. *Id.* We ask whether a reasonable judge, in the same situation as the trial court, should have experienced doubt about the accused's competency to stand trial. *Id.*

■ Branscomb fails to carry his burden. Unless there is some contrary indication, state and federal trial judges may presume that defendants are competent. *Weisberg v. State of Minnesota*, 29 F.3d 1271, 1276 (8th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 935, 130 L.Ed.2d 880 (1994). Other than a statement by defense counsel that Branscomb exhibited to them "extreme distrust,

---

2. The magistrate judge addressed the merits of the two other claims Branscomb raised on direct appeal and ruled that Branscomb procedurally defaulted an ineffective assistance claim. We do not address these claims because Branscomb abandons them on appeal.

paranoia, and flights of fantasies," the trial court had before it no evidence that Branscomb acted irrationally. While some of Branscomb's claims about himself were unquestionably false, he communicated effectively with the trial judge during his change of plea hearing, and he testified coherently from the witness stand during a suppression hearing. Branscomb denied that he had undergone prior psychiatric evaluation or treatment, and there is no evidence in the record to contradict his report. The state psychiatrist concluded that Branscomb did not suffer from major psychosis, and the statement of defense counsel alone was not enough to establish sufficient doubt about Branscomb's competency. On these facts, the trial judge was not required to hold a competency hearing *sua sponte*. *Cf. Griffin*, 935 F.2d at 930–31 (holding there was evidence casting doubt on accused's competency to stand trial sufficient to warrant hearing); *Campbell v. Lockhart*, 789 F.2d 644, 646 (8th Cir.1986) (same).

III. Independent Psychiatric Evaluation

■ Branscomb next reasserts his claim that the state trial court violated his due process rights by failing to grant his motion for an independent psychiatric expert at state expense. We review de novo the legal conclusion of the magistrate judge that Branscomb's due process rights were not violated. *See Fairchild v. Lockhart*, 900 F.2d 1292, 1295 (8th Cir.), *cert. denied*, 497 U.S. 1052, 111 S.Ct. 21, 111 L.Ed.2d 833 (1990). Branscomb argues that the evaluation by the Arkansas State Hospital did not comply with the requirements of *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), because the evaluation report was sent to the court and counsel and the psychiatric expert was not retained for the sole purpose of assisting the defense. He further argues that he made a sufficient showing of a reasonable probability that an independent expert would have aided in his defense and that denial of such assistance resulted in an unfair trial. *See Little v. Armontrout*, 835 F.2d 1240, 1244 (8th Cir.1987) (en banc), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988). The State responds that the Arkansas Supreme Court rejected this claim for the reason that, under state law, a court-ordered evaluation by the Arkansas State Hospital satisfies the requirements of *Ake v. Oklahoma*. *Branscomb*, 774 S.W.2d at 486. Moreover, the State argues, Branscomb did not tell the trial court why he wanted or needed an independent psychiatric evaluation, and Branscomb did not argue his mental capacity as to any issue at the trial.

■ A state must provide an indigent defendant access to a psychiatrist's assistance if the defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, *Starr v. Lockhart*, 23 F.3d 1280, 1287 (8th Cir.) (citing *Ake v. Oklahoma*), *cert. denied*, —— U.S. ——, 115 S.Ct. 499, 130 L.Ed.2d 409 (1994), and that the denial of such expert assistance would result in an unfair trial. *Little*, 835 F.2d at 1244. Psychiatric assistance in the evaluation, preparation, and presentation of a defense is constitutionally required where the accused's mental condition is crucial to his defense, whether that condition is insanity or mental retardation. *Starr*, 23 F.3d at 1288.

Branscomb failed to produce evidence supporting his request for an independent expert, and thus, he failed to make the preliminary showing required by *Ake v. Oklahoma*. *Cf. Starr*, 23 F.3d at 1287 (noting that Starr resided in institutions for the mentally retarded and I.Q. testing placed him in the lowest one percent of the adult population in intelligence). As we noted in our discussion of the previous issue, the trial court did not have *any* evidence before it placing seriously in issue Branscomb's sanity or mental function at the time the crime was committed. If Branscomb had placed such evidence before the trial court, he might have been able to show that an independent expert could assist the jury in determining whether Branscomb possessed the mental ability to act with "deliberate conduct," an element the State must prove to win a conviction for capital felony murder. *See Burnett v. State*, 295 Ark. 401, 749 S.W.2d 308, 314 (1988). But without such evidence of mental incapacity, Branscomb could not meet the requirements of *Ake* or *Little*. Thus, we conclude that the state trial court did not violate Branscomb's due process rights by refusing to appoint an

independent psychiatric expert at state expense.

### IV. Competency to Waive Counsel

 Branscomb finally argues that, because of his mental retardation, he was not competent to waive his Sixth Amendment right to counsel at the time he was questioned by law enforcement officers. Relying on *Godinez v. Moran*, —— U.S. ——, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), and *Wright v. Lockhart*, 914 F.2d 1093, 1102 (8th Cir.1990), *cert. denied*, 498 U.S. 1126, 111 S.Ct. 1089, 112 L.Ed.2d 1193 (1991), he contends that the state trial court should have determined that he did not knowingly and voluntarily waive his right to counsel and, as a result, the trial court should have suppressed his incriminating statements. The State argues that the magistrate judge properly rejected this claim, as did the Arkansas Supreme Court.

■ The competency standard for waiving the right to counsel is the same as that required to stand trial. *Godinez*, —— U.S. at ——, 113 S.Ct. at 2686 ("[T]here is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights."). We have already determined that Branscomb failed to produce evidence raising a sufficient doubt as to his competence to require the state trial court to conduct a hearing to determine his competency to stand trial. The same lack of evidence dooms this claim as well.

At the time of the suppression hearing, the state trial judge knew from the Arkansas State Hospital report that a psychiatrist had found Branscomb to be mildly mentally retarded, but competent at the time of the offense and competent to stand trial. Branscomb does not dispute that he received an oral *Miranda* warning and signed the rights waiver form before officers questioned him about the crime. These warnings placed Branscomb on notice of his right to counsel and the consequences of his decision to decline counsel. Officer Rainbolt recorded in his own handwriting Branscomb's incriminating statements, and Branscomb then made minor corrections and initialed the statements. Although Branscomb denied at the suppression hearing that he made the statements and signed the written documents, the Arkansas Supreme Court upheld the trial court's finding that Rainbolt was the more credible witness. We give this state court finding the presumption of correctness it deserves. 28 U.S.C. § 2254(d). Having carefully reviewed de novo the legal issue in light of the entire record, we conclude that the magistrate judge correctly ruled that Branscomb knowingly and voluntarily waived his right to counsel.

Accordingly, the judgment is affirmed.