Jimmie L. WEEKLEY, Appellee,

v.

Jimmie JONES, Appellant.

No. 94–2064.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1995.

Decided June 1, 1995.

Stacy Louise Anderson, Asst. Atty. Gen., Jefferson City, MO, argued, for appellant.

Michael Herman Maguire, Cape Girardeau, MO, argued, for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HENLEY, Senior Circuit Judge.

Following our remand in *Weekley v. Jones,* 927 F.2d 382 (8th Cir.1991), the district court entered a judgment granting Jimmie L. Weekley's petition for a writ of habeas corpus under 28 U.S.C. § 2254. The State of Missouri now appeals. We reverse in part and affirm in part.

## BACKGROUND

In March 1980, a jury convicted Weekley of second degree murder of his wife, but could not agree on a sentence. The trial court sentenced Weekley to life imprisonment. His conviction and sentence were affirmed on direct appeal, *State v. Weekley,* 621 S.W.2d 256 (Mo.1981), and his motions for post-conviction relief were denied.

Initially Weekley was represented by a public defender and entered a plea of not guilty by reason of insanity. *See* Mo.Rev. Stat. § 552.030.[1] He later retained counsel and withdrew the plea and entered a straight not guilty plea.

As the district court noted, the evidence against Weekley was "devastating." The first deputy sheriff on the death scene in June of 1978 saw Weekley standing in the doorway of his daughter's mobile home gripping the barrel of a shotgun "with the lower portion of his face blown off." His wife's body was in a bedroom of the home; she had been shot in the head. Three of Weekley's children also implicated him.

Weekley testified in his defense. He stated that the only thing he remembered after lying down on a couch was "it just got dark." He presented no other witnesses.

Following the shooting, Weekley was taken to a hospital for treatment of his gunshot wound. In August 1978, the prosecutor filed a motion for a competency examination, which the trial court granted. Under date of September 7, 1978, Dr. E. Corales reported that Weekley's past psychiatric history included a ten-day hospitalization in March 1973 for paranoid thoughts "directed towards his wife, whom he felt was having multiple affairs and ... had hired two gangs to kill him," a six-month hospitalization in 1976 following threats to commit suicide and murder his wife, a one-month hospitalization in 1977 after another suicide threat, and a readmis-

---

**1.** More precisely, Weekley pleaded not guilty by reason of a mental disease or defect. Because our previous opinion and the district court opinion refer to the plea as an insanity plea, in this opinion we also refer to it as an insanity plea.

sion and out-patient treatment later that year for delusional thinking and an assault. Weekley told Dr. Corales that, during his current hospital stay, he had seen "small people" running around his hospital room and that he had seen these "people" in the past "when they were putting acid in his boots and wanted to kill him." Weekley knew his wife had been shot, but the only thing he remembered was that he had difficulty sleeping before the incident and that it was "dark." Dr. Corales diagnosed Weekley as having paranoid schizophrenia manifested by disturbances in thinking, mood and behavior, borderline mental retardation, and brain dysfunction resulting from the self-inflicted gunshot wound. Dr. Corales did not form an opinion as to whether Weekley was insane at the time of the crime because of lack of supporting material, but believed he was incompetent to stand trial. However, Dr. Corales recommended reevaluation following surgery and treatment with anti-psychotic medication.

Dr. Sadashiv Parwatikar reevaluated Weekley. In a report dated November 4, 1978, the doctor noted that Weekley was taking his medication regularly and was cooperative. However, Weekley still could not remember shooting his wife and still believed that his wife had tried to kill him and had "little green men put acid in [his] shoes." Dr. Parwatikar diagnosed Weekley as having schizophrenia, paranoid type, in remission, borderline mental retardation with an IQ of 71 with some organic impairment in the verbal area, as well as complications from the gunshot wound. Dr. Parwatikar concluded that Weekley, having been medicated, was competent to stand trial. However, the doctor concluded that Weekley was suffering from a mental disease or defect at the time of the crime "which made him act on his delusions against his wife," and recommended consideration of a not guilty by reason of insanity plea, noting that his schizophrenia was long-standing and could not be cured, but only arrested with ongoing medication.

At a conference on the morning of trial, the court considered the questions of Weekley's competency and withdrawal of his in-

sanity plea. The court noted that a doctor had found him competent to stand trial and asked Weekley if he had the capacity to understand the proceedings against him and assist in his defense. He replied "Yeah." After several other questions, the court entered an order finding Weekley competent.

The court then asked Weekley if he wanted to withdraw the insanity plea. Trial counsel asked the court if he could question Weekley because he did not know if Weekley understood the legal terms. After Weekley hesitated in answering counsel's questions, the following took place:

COURT: Maybe I could put it a different way than [counsel]. What we're saying to you is do you want to plead insanity in this case, that is that you weren't responsible for your actions?

WEEKLEY: I understand what you mean, but I don't know what to say. I actually don't.

COUNSEL: I believe we have to rely upon his lawyer in this case and I take full responsibility for the sake of the record.... It was Mr. Weekley's desire that he invoke the defense of Not Guilty. Mr. Weekley by the very act of the offense does not remember ... a lot of things that took place. He was, you know seriously injured himself, but he feels that he is Not Guilty of Manslaughter, is that right?

WEEKLEY: For whatever reason.

COUNSEL: I mean Murder in the Second Degree or Manslaughter or anything. He does not feel that he killed his wife.

COURT: Mrs. Weekley,[2] I'll have to rely on you somewhat. Do you feel that it's your husband's best interest to withdraw the Plea of Not Guilty by Reason of Mental Disease or Defect?

MRS. WEEKLEY: I don't know ... I do bedpans, you do lawbooks, OK.

\* \* \* \* \* \*

PROSECUTOR: Your Honor, I hate to interrupt but I believe ... that they can go with also Not Guilty and Not Guilty by Reason of Insanity and combine the two.

2. Weekley married a nurse he met in the hospital after his gunshot wound.

COURT: Yes, you can raise both defenses at the same time if you want or you can raise one or the other. In other words, you can plead Not Guilty or Not Guilty and Not Guilty by the Reason of Mental Disease or Defect or Not Guilty by the Reason of Mental Disease or Defect.

COUNSEL: Well, the only reason we're here is we thought we were trying him on the grounds that he was Not Guilty. That's what you hired us for.

The court then asked Weekley if he was withdrawing his plea freely and voluntarily, had time to think about it, and had discussed it with counsel. Weekley said yes, and the court allowed Weekley to withdraw the insanity plea.

On direct appeal, Weekley raised issues regarding jury selection, instructions and evidence, which the state supreme court rejected; he did not raise any issue as to competency. In a post-conviction motion, Weekley argued that he was insane at the time of the crime and that counsel was ineffective for allowing him to withdraw his insanity plea. The post-conviction court found that defense counsel was not ineffective, noting that he was a well-known criminal defense attorney and that the trial court had questioned Weekley about withdrawing the plea. The court also mentioned that the trial court's competency finding was supported by the doctors' reports. On appeal, Weekley contended that counsel had failed to fully apprise him of the consequences of withdrawing the insanity plea and had coerced him into doing so. The appellate court summarily affirmed. Weekley filed a second post-conviction motion, renewing his ineffective assistance claim and adding another jury selection issue. The motion was denied, and the denial was summarily affirmed.

In his federal habeas petition, Weekley raised jury selection issues and an ineffective assistance of counsel issue relating to the withdrawal of the insanity plea. The district court denied relief and Weekley appealed.

This court reversed and remanded on all issues, holding that the record needed further development. In particular, we noted concern regarding Weekley's competency at the time of trial and instructed the district court "to take a second look" at its conclusions regarding trial counsel's ineffectiveness in the context of this court's concern regarding competency. 927 F.2d at 387. However, we directed the district court's attention to *Wright v. Lockhart*, 914 F.2d 1093 (8th Cir. 1990), *cert. denied*, 498 U.S. 1126, 111 S.Ct. 1089, 112 L.Ed.2d 1193 (1991), in which this court held that a competency claim was subject to a procedural bar. 927 F.2d at 387–88. We also directed the district court's attention to *Chambers v. Armontrout*, 907 F.2d 825, 830 (8th Cir.) (en banc), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990), in which we held that counsel was ineffective for abandoning a defendant's only viable defense. 927 F.2d at 388.

On remand, the district court referred the matter to a magistrate judge, who held an evidentiary hearing. Weekley abandoned the jury selection issues, but pursued his claim that trial counsel was ineffective in advising him to withdraw the insanity plea. Counsel testified via deposition. He stated that he had been a defense attorney since 1947 and had used an insanity defense on numerous occasions. However, he believed it was a perilous defense, explaining that if the jury did not "buy" the defense, the defendant was sure to be convicted since he admitted the crime and the jury might be "revolted" by the details. In determining whether to present the insanity defense, counsel stated he considered a number of factors, including the nature of the crime and the nature of the mental disease or defect, indicating mental retardation and hospitalization for a psychosis would be significant factors.

As to Weekley's case, counsel testified that he saw Weekley on several occasions. He stated he did not do any additional investigation of Weekley's history of mental problems because the "doctors did it all." He was concerned whether the jury would "buy" the defense because the murder was a "domestic shooting," noting Weekley had believed that his wife had been unfaithful and that he had threatened her in the past. However, counsel did not remember that Weekley told the doctors that his wife had "little green men" put acid in his shoes in an attempt to kill him.

In any event, counsel stated "I told them I would not invoke the insanity defense, and that if they hired me, it would be for a direct not guilty defense, and that's because they were concerned about the difference in incarceration and the mental institution." Counsel stated Weekley was concerned about spending an indefinite amount of time in a mental hospital and had heard that one of counsel's clients who was acquitted by reason of insanity committed suicide in a mental hospital. Counsel conceded that Weekley had no defense to the shooting, but believed that because of Weekley's appearance [3] and his feelings about his wife, the jury "would go easy on him punishment-wise." Counsel stated that he did not take any additional steps to make sure Weekley understood the consequences of his plea.

At the hearing, Weekley testified that he only met with counsel twice and never told counsel he preferred a definite prison sentence to an indefinite stay in a mental hospital. Rather, Weekley claimed that counsel coerced him into withdrawing the insanity plea by telling him that one of his clients had committed suicide while in a mental hospital. Weekley also said that counsel never explained that he could enter both an insanity plea and a not guilty plea, had not discussed with him that he had no defense to the crime, "didn't want to hear" that Dr. Parwatikar believed he should plead insanity, and that it was counsel's decision to enter the not guilty plea. Moreover, he stated had he known he did not have a defense he would not have withdrawn the insanity plea.

The magistrate judge recommended granting Weekley's habeas petition. He first found that Weekley's substantive and procedural due process rights were violated because the evidence at the pretrial hearing did not support a finding that Weekley was competent to stand trial, citing *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam), and the pretrial hearing was an inadequate competency hearing under *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). The magistrate judge rejected the state's defense of procedural default, noting that the motion

court, in ruling on an ineffective assistance claim, mentioned that the competency finding was supported by the doctors' reports. Alternatively, it was held that even if competency issues were defaulted, ineffective assistance of counsel excused the default.

In addition, it was held that counsel was ineffective under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The magistrate judge believed that, despite the strong presumption in favor of trial counsel, his performance in regard to both Weekley's competency and withdrawal of the insanity plea fell below an objective standard of reasonableness and that the deficient performance prejudiced Weekley. As to competency, the magistrate judge believed that counsel's performance was unreasonable because he relied on his own opinion as to competency, did not seek further professional opinions, and did not raise a competency issue. As to the withdrawal of the insanity plea, the magistrate judge believed that counsel's performance was unreasonable because he decided initially to try the case on a not guilty plea and ignored information raising doubts about Weekley's sanity, failed to investigate Weekley's psychiatric history, failed to raise both a not guilty and insanity plea, and advised Weekley to plead not guilty when there was no defense.

Over the state's objections, the district court adopted the report and recommendation of the magistrate judge. The court granted habeas relief, and remanded the case to the state court for a competency hearing, and, if Weekley was found competent, directed the state to retry him in a reasonable time or to release him from custody. The state filed a timely appeal.

## DISCUSSION

 On appeal, the state argues that the district court erred in granting relief on due process and ineffective assistance claims relating to Weekley's competency because, among other reasons, the claims were procedurally defaulted. We agree. Contrary to Weekley's argument on appeal, issues regarding competency to stand trial are subject

---

3. As a result of the self-inflicted gunshot, Weekley was disfigured.

to a procedural bar and other affirmative defenses. *See Branscomb v. Norris,* 47 F.3d 258, 261 (8th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2260, 132 L.Ed.2d 266 (1995); *Bainter v. Trickey,* 932 F.2d 713, 716 (8th Cir.1991); *Wright v. Lockhart,* 914 F.2d at 1102. Weekley did not raise any issue as to his competency in his direct appeal or in his post-conviction motions. The fact that the motion court mentioned that the doctors' reports supported the state trial court's competency finding was not a review on the merits. *See Branscomb,* 47 F.3d at 261 (rejecting argument that state court "essentially" considered competency issue in reviewing denial of motion for psychiatric evaluation). Even if the court had undertaken a review on the merits, it only would have been a review of a substantive due process claim, which would still be defaulted because Weekley did not raise a competency issue on appeal of the denial of the motion. *See Boyd v. Groose,* 4 F.3d 669, 671 (8th Cir.1993).

■ Nor, contrary to the district court's finding, has Weekley demonstrated cause to excuse the default. Although ineffective assistance of counsel can be cause to excuse a procedural bar, a claim first must be presented to state courts before it can be used to establish cause for a procedural default. *Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). Although in his post-conviction motions Weekley raised ineffective assistance claims, he did not raise a competency claim. Nor has Weekley demonstrated that failure to consider his claim will result in a fundamental miscarriage of justice. His argument on appeal is nothing more than a recasting of his previously rejected argument that competency issues are not subject to procedural defenses.[4]

■ We also agree with the state that because any issue as to Weekley's competen-

cy is barred, this court must presume that Weekley was competent to withdraw his insanity plea and that the only issue that remains for review is whether counsel was ineffective for advising Weekley to withdraw the insanity plea. The state argues that the district court erred in holding that counsel was ineffective because counsel's advice was a matter of trial strategy based on Weekley's expressed desire to avoid spending an indefinite time in a mental institution. The state appears to concede that counsel did not investigate Weekley's mental history, but argues investigation would not have changed counsel's decision because of Weekley's wishes. The state relies on this court's recent decision in *LaRette v. Delo,* 44 F.3d 681 (8th Cir.1995). In *LaRette,* this court held that an attorney's failure to investigate and present evidence of a defendant's mental condition was not unreasonable, in part, because the defendant told counsel not to pursue a mental illness defense. *Id.* at 685–86. We also note the recent case of *Antwine v. Delo,* 54 F.3d 1357, 1368, (8th Cir.1995), in which this court held that "in the face of Antwine's own firm decision against a less-than-complete defense, we cannot say that it was unreasonable of counsel not to make a diminished-capacity argument in the guilt phase."

We find *LaRette* and *Antwine* distinguishable because, among other reasons, the record does not reflect, and the district court did not find, that Weekley instructed counsel not to present an insanity defense. As Weekley points out, at the evidentiary hearing he disputed counsel's testimony about his desire to avoid spending time in a mental hospital and claimed that counsel coerced him into entering the plea by scaring him with the story of an insanity acquittee suicide.

Although its credibility findings concerning the disputed testimony may not have been

---

4. The author of this opinion is sympathetic to the argument that competency issues should not be subject to procedural defenses. He is aware that in *Schlup v. Delo,* —— U.S. ——, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), the Supreme Court indicated that the fundamental-miscarriage-of-justice exception to procedural bar is limited to claims of actual innocence. Because "whether a defendant was guilty or innocent is irrelevant if he was

convicted while incompetent[,]" *Theriot v. Whitley,* 18 F.3d 311, 313 (5th Cir.1994), the author believes that *Schlup* is unsuited to analyzing competency issues and envisions a case where failure to review a competency claim will result in a fundamental miscarriage of justice, even though the petitioner in fact committed the crime.

completely express, the court certainly did not find that Weekley directed counsel not to present an insanity defense. To the contrary, we believe that the court found that it was counsel, not Weekley, who made the decision to withdraw the insanity plea. The court stated:

> Petitioner's trial attorney appears to have made up his mind from the very beginning that the case was to be tried under a plea of not guilty and closed his mind to any alternative to that position, even though there was strong evidence that his client had a mental disease or defect [and] was insane at the time the crime was committed. . . . [5]

■ Certainly, if counsel made the decision to withdraw the insanity plea without consideration of the available medical evidence and coerced Weekley into doing so, counsel's performance would be professionally unreasonable. *See Bouchillon v. Collins,* 907 F.2d 589, 596 (5th Cir.1990) (counsel's performance unreasonable where he failed to investigate insanity defense and "persuaded" defendant into abandoning defense by telling him that juries reject defense despite expert testimony); *Thomas v. Lockhart,* 738 F.2d 304, 309 (8th Cir.1984) (counsel's performance unreasonable where he failed to investigate defendant's psychiatric history and "persuaded" defendant to plead guilty by giving him impression that "a trial would be an exercise in futility" because of racial prejudice). *Compare Sidebottom v. Delo,* 46 F.3d 744, 754 (8th Cir.1995) (rejecting ineffective assistance claim where counsel reviewed psychological report showing no indication of incompetency or insanity and "after conferring with [defendant], made a strategic decision not to present a psychological defense").

■ In any event, the district court went on to hold that even if counsel's advice to withdraw the insanity plea was a matter of trial strategy based on Weekley's desire not to spend an indefinite amount of time in a mental hospital, the strategy was professionally unreasonable because it was based on an inadequate investigation and left Weekley without a viable defense. We agree.

■ Although " '[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions[,]' " *LaRette,* 44 F.3d at 685 (quoting *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066), it does not follow that an attorney may blindly follow a client's uncounselled wishes. "The reason lawyers may not 'blindly follow' such commands is that although the decision to use [insanity] evidence in court is for the client, the lawyer must first evaluate potential avenues and advise the client of those offering merit." *Thompson v. Wainwright,* 787 F.2d 1447, 1451 (11th Cir.1986) (internal citation omitted), *cert. denied,* 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). "Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are [the] cornerstones of [the] effective assistance of counsel." *Beavers v. Balkcom,* 636 F.2d 114, 116 (5th Cir. 1981) (internal quotation omitted). We have observed that "strategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel[,]" *Kenley v. Armontrout,* 937 F.2d 1298, 1304 (8th Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991), and "if limiting the investigation was not reasonable, then neither was the subsequent strategic choice." *Antwine,* 54 F.3d at 1367.

It is undisputed that counsel did not investigate Weekley's psychiatric history, other than reviewing the reports of Doctors Corales and Parwatikar. We find somewhat surprising counsel's failure to obtain the records of Weekley's past hospitalizations for paranoid delusions directed towards his wife, even though counsel acknowledged that a hospitalization for a psychotic episode would

---

**5.** A finding that it was counsel, not Weekley, who insisted on withdrawing the insanity plea and trying the case on a not guilty plea is supported by the record. At the change of plea hearing, in response to the court's inquiry whether he wanted to plead insanity, Weekley responded, "I understand what you mean, but I don't know what to say." Counsel then responded, "I believe we have to rely upon his lawyer in this case and I take full responsibility for the sake of the record."

be a significant factor in deciding whether to present an insanity defense. Also surprising is counsel's testimony that, although he reviewed the doctors' reports, he did not remember that Weekley told the doctors that his wife was trying to kill him by having "little green men" put acid in his shoes.

In this case, counsel's "explanation that he did not investigate ... because of [Weekley's] request," or take steps to ensure that Weekley understood the consequences of the various pleas, is "especially disturbing," because counsel was aware of Weekley's "mental difficulties." *Thompson,* 787 F.2d at 1451. Even though Dr. Parwatikar concluded that Weekley was competent to stand trial, he nonetheless reported that Weekley had a "thinking disorder ... complicated by his borderline mental retardation which ma[de] it difficult for him to use proper judgment." We believe that "[a]n attorney has expanded duties when representing a client whose condition prevents him from exercising proper judgment." *Id.* at 1451. *See Antwine,* 54 F.3d at 1367 (counsel should have requested second mental examination because counsel was aware that defendant "had acted oddly before the offense" and that "a cursory mental examination conducted four months after the offense was abnormal").

Moreover, Weekley's trial counsel conceded that, other than an insanity defense, Weekley had no defense to the shooting and could only hope that the jury would go "easy on [him] punishment-wise." We note counsel's concern that in an insanity defense all the details of the crime would be revealed and the jury might be revolted. However, at trial the state on direct examination introduced the gruesome details of the shooting, including a sheriff's description of brain matter and teeth littering the floor of the mobile home. In this case, given all the circumstances, including counsel's failure to conduct any investigation, Weekley's "lack of recollection of the criminal episode[,] the witness and police accounts about the crime scene, ... the evidence of insanity at the time of the crime, and the fact [Weekley] could have entered a not guilty plea *and* an insanity plea," *Weekley,* 927 F.2d at 388, we refuse to

"baptize the decision to forego the insanity defense with the rejuvenating labels of 'tactical' or 'strategic' choice." *Profitt v. Waldron,* 831 F.2d 1245, 1249 (5th Cir.1987). "It appears to us not only that [Weekley's] lawyer[ ] failed to present a defense that would have been both credible and well documented by [his] medical history, but also that the defense that *was* offered was barely believable at best and, even worse, not documented by [his] medical history." *Hill v. Lockhart,* 28 F.3d 832, 843 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 778, 130 L.Ed.2d 673 (1995). As the district court noted, "[a]t least insanity would have given a reason for what occurred. [Weekley's] testimony gave no reason, except that he blacked out."

We thus conclude that the district court correctly held that counsel's performance was professionally unreasonable and turn to the question whether the performance prejudiced Weekley. The state argues there was no prejudice because further investigation would not have changed the outcome in this case, noting counsel's belief that a jury would not "buy" an insanity defense in a "domestic shooting." We disagree.

Under *Strickland,* a counsel's performance is prejudicial if "there is a reasonable probability that, but for, counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068. The Supreme Court recently has made it clear that a " 'defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under *Strickland'* " and that the reasonable probability standard "is not a sufficiency of evidence test." *Kyles v. Whitley,* —— U.S. ——, ——, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (quoting *Nix v. Whiteside,* 475 U.S. 157, 175, 106 S.Ct. 988, 998, 89 L.Ed.2d 123 (1986)). Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. In other words, a " 'counsel's unprofessional errors [must] so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict suspect.' " *Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d

180 (1993) (quoting *Nix,* 475 U.S. at 175, 106 S.Ct. at 998).

In the circumstances of this case, we believe that Weekley has demonstrated prejudice sufficient to undermine our confidence in the verdict. Assuming there is such a thing as a typical "domestic shooting," as the state suggests, this is not such a case. Although it is true, as counsel noted, that Weekley believed that his wife was having affairs and had tried to kill him, his thoughts, as illustrated by his belief that his wife had "little green men" put acid in his shoes, were delusional and resulted in repeated and lengthy hospitalizations for paranoid schizophrenia. Moreover, Dr. Parwatikar concluded that Weekley was insane at the time of the shooting, and his conclusion is consistent with Weekley's past behavior, and not, as the state suggests, merely based on "subjective information provided by the petitioner." Nor does Dr. Parwatikar's report contain "damaging" information or conflict with Dr. Corales' report. Therefore, we believe had counsel, at a minimum, introduced evidence of Weekley's psychiatric history and from Dr. Parwatikar, there is a reasonable probability that a jury would have "bought" an insanity defense.

■ The state further argues that even if Weekley would have succeeded on an insanity defense, he still has not demonstrated prejudice because his indefinite commitment to a mental institution would be the equivalent to life imprisonment. Again, we disagree. Regardless of what we might believe individually, the Supreme Court has held that "confinement in prison is punitive and hence more onerous than confinement in a mental hospital[.]" *Heller v. Doe,* —— U.S. ——, ——, 113 S.Ct. 2637, 2645, 125 L.Ed.2d 257 (1993). In *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 1785, 118 L.Ed.2d 437 (1992), the Supreme Court explained that "a State, pursuant to its police power, may of course imprison convicted criminals for the purposes of deterrence and retribution." However, the Court went on to explain that a state had no punitive interest in an insanity acquittee, because the "acquittal exempted [him] from criminal responsibility." *Id.*

Accordingly, we reverse that portion of the district court's judgment granting relief on grounds relating to Weekley's competency to stand trial, including the district court's direction to the state court for a competency hearing, and affirm that portion of the judgment granting habeas relief on the ground of counsel's ineffectiveness relating to withdrawal of the insanity plea. The State of Missouri is directed to retry Weekley within a reasonable time or release him from custody.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting and concurring.

I respectfully dissent from so much of the court's judgment as affirms the district court because I do not believe that counsel's strategy was unreasonable and because my confidence in the result reached in this case is not undermined. Insanity defenses are notoriously difficult because jurors are reluctant to accept them. Indeed, many juries are, rightly or wrongly, inflamed by them. I am thus unable to join the court's conclusion that there is a reasonable probability that the jury in this case would have returned a verdict of not guilty by reason of insanity.

I concur in the opinion of the court in all other respects.