No. 94-2064

Jimmie L. Weekley,                      *
                                        *
       Appellee,                        *
                                        *  Appeal from the United States
         v.                             *  District Court for the
                                        *  Eastern District of Missouri.
Jimmie Jones,                           *
                                        *
       Appellant.                       *

Submitted:   September 11, 1995

  Filed:     February 23, 1996

Before RICHARD S. ARNOLD, Chief Judge, and HENLEY, McMILLIAN, FAGG,
     BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD
     ARNOLD, and MURPHY, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

     This protracted litigation grew out of tragic events that
occurred more than seventeen years ago when Jimmie L. Weekley
evidently killed his wife with a shotgun and then turned the weapon
on himself in an unsuccessful attempt to commit suicide.  A jury
convicted him of second-degree murder in 1980, a judge (the jury
being unable to decide on a sentence) sentenced him to life in
prison, and, after his conviction was affirmed on appeal, see State
v. Weekley, 621 S.W.2d 256 (Mo. 1981), Mr. Weekley twice petitioned
for post-conviction relief on various grounds in the state courts
of Missouri and was turned away.

     Mr. Weekley then applied for habeas corpus relief in the
appropriate federal district court under 28 U.S.C. § 2254(a), and
his petition was denied.  Our court reversed this denial on appeal,

see Weekley v. Jones, 927 F.2d 382 (8th Cir. 1991), and remanded to the district court for further proceedings with respect to whether Mr. Weekley's jury was constitutionally constituted, whether his mental condition was such that he was denied due process when he was put to trial, and whether his counsel was ineffective for not asserting that he was incompetent to stand trial and for not going forward with an insanity defense. On remand, Mr. Weekley abandoned his claim that his jury was unconstitutionally composed, but the district court granted the writ on his other claims. On appeal, a panel of our court affirmed the district court's grant of the writ on the ground that counsel was ineffective for not pursuing an insanity defense, but it reversed that portion of the district court's judgment that granted relief on other grounds. See Weekley v. Jones, 56 F.3d 889 (8th Cir. 1995). We granted the state's petition for rehearing en banc and vacated the panel's decision.

I.

For the reasons stated in the original panel decision, we reverse the holding of the district court that Mr. Weekley was entitled to relief on his due process claim and because his counsel was ineffective for not asserting that he was incompetent to stand trial. See Weekley v. Jones, 56 F.3d 889, 894-95 (8th Cir. 1995).

II.

A good deal more complex and troubling is Mr. Weekley's claim that his counsel was ineffective by persuading Mr. Weekley to withdraw his defense of "not guilty by reason of insanity" and proceeding to trial on a simple plea of "not guilty." Mr. Weekley has occasionally characterized his claim as one that his lawyer "coerced" him into changing his plea, but we think that what he means by that is that his lawyer did not properly investigate the viability of such a defense and did not advise him of the possibility of proceeding simultaneously with pleas of "not guilty" and "not guilty by reason of insanity."

-2-

Mr. Weekley's counsel tells an entirely different story. He asserts that it was Mr. Weekley himself who insisted on withdrawing the insanity plea because he did not want to run the risk of receiving an indeterminate sentence in a mental institution. Mr. Weekley preferred, his counsel said, to run the risk of a fixed sentence in a prison. The district court made no specific finding on this conflict in the testimony, although it at least intimated that it did not believe Mr. Weekley's counsel entirely, because it held that counsel "fell below the standard [of reasonably competent representation of his client] by deciding when he was first hired that the matter would be tried on a plea of not guilty." The district court also found counsel ineffective for not pursuing simultaneously a defense of "not guilty" and "not guilty by reason of insanity," especially since there was no plausible defense on the facts.

At the time that counsel took up his representation of Mr. Weekley, he knew that two psychiatrists, Dr. E. Corales and Dr. Sadashiv Parwatikar, had examined Mr. Weekley and that both of them had determined that he suffered from paranoid schizophrenia. Counsel also knew that Dr. Corales had been unable to make a determination as to Mr. Weekley's probable responsibility at the time that he committed the murder, but that Dr. Parwatikar had opined, in words that more or less tracked the relevant Missouri statute, that when Mr. Weekley committed the offense he "did not know or appreciate the nature, quality or wrongfulness of his conduct and, thus, he was incapable of conforming his conduct to the requirements of the law." See Mo. Ann. Stat. § 552.030.1 (subsequently amended to omit the last phrase). There was therefore some indication that a defense based on mental defect was available to Mr. Weekley.

We emphasize that all this is beside the point if counsel's intention was to protect Mr. Weekley from an indeterminate sentence

in a mental institution and if such a strategy was a reasonable one from a professional perspective. The first condition seems to be admitted by all: No one has contradicted the fact that the avoidance of an indeterminate sentence was counsel's aim, and, indeed, the district court did not find otherwise. We see nothing inherently unprofessional, moreover, about such a strategy. At trial, counsel did make some effort to cast doubt on Mr. Weekley's guilt (there were no eyewitnesses), and Mr. Weekley did not admit that he had killed his wife (he testified that he blacked out), but counsel endeavoured mainly to make Mr. Weekley out a sympathetic character because of his self-inflicted wounds and evident physical difficulties in an attempt to influence the jury to give him a light sentence.

Such a strategy, it seems to us, would be professionally irresponsible only if Mr. Weekley were opposed to it or were not adequately informed of his choices, including the choice to proceed on a combined plea of "not guilty" and "not guilty by reason of insanity," and would have chosen to proceed on the basis of a combined plea. See LaRette v. Delo, 44 F.3d 681, 685-86 (8th Cir. 1995), cert. denied, 116 S. Ct. 246 (1995). Mr. Weekley testified below that his counsel did not adequately explain his options to him, but counsel asserted otherwise by way of deposition. The district court again made no finding of fact on this conflict in the testimony. But during trial, in a lengthy colloquy that has been extensively dissected in previous opinions of this court, and by the court below, Mr. Weekley admitted on the record that he did indeed understand his pleading options (which the trial court carefully described to him) and at no time expressed dissatisfaction with his attorney. Indeed, he affirmatively stated during this colloquy that he was relying on his counsel and later during the trial he expressed complete satisfaction with his counsel's representation. We think that in those circumstances a finding of fact that accepted Mr. Weekley's self-serving and

-4-

late-blooming protestations would have been difficult to uphold on appeal. We mean it in all sincerity when we say that Mr. Weekley's sentence must necessarily have caused him some retroactive dissatisfaction with counsel's efforts.

Even if counsel in this case had failed to provide Mr. Weekley with effective assistance, however, we do not believe that he has shown prejudice. Mr. Weekley is not entitled to relief unless "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). Despite the use of the word "probability" in this formulation, the Supreme Court has explained that a reviewing court does not have to believe that an alternative strategy would more likely than not have succeeded. Instead, the Court indicated that a "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. We are thus to assume in this case that counsel had pursued a defense that at least included a plea of "not guilty by reason of insanity" and ask ourselves whether success with it would have been reasonably probable. We do not believe that it would have been for the following reasons.

1. We are met at the outset with the difficulty that there are some material facts missing from the hypothetical posture into which we must put ourselves in order to answer the relevant question. For instance, we do not know what other psychiatrists might have said about Mr. Weekley's condition at the time he committed the offense. If counsel had had Mr. Weekley examined by another psychiatrist (as the district court indicated reasonably competent counsel was obligated to do), and that psychiatrist had found Mr. Weekley mentally sound at the time he committed the offense, that could have done considerable damage to Mr. Weekley's case, because, under Missouri law, that finding would have to have been communicated to the prosecution and could have been used

against Mr. Weekley at trial. See Mo. Ann. Stat. § 552.030.3, § 552.030.5.

Nor do we know exactly how Dr. Parwatikar would have testified or, indeed, whether he would have testified at all. (Under Missouri law, Dr. Parwatikar's written report itself was admissible into evidence. See id.) Mr. Weekley has never made an offer of proof on Dr. Parwatikar's availability or on the contents of his testimony. It is not a criticism of Dr. Parwatikar's report that it is somewhat curt, laconic, and conclusory, stating only that he believed that Mr. Weekley "was suffering from a mental disease or defect at the time of the alleged crime which made him act on delusions against his wife," and ending with boilerplate that more or less parrots the statement of the legal standard of insanity contained in the language of Mo. Ann. Stat. § 552.030.1 in effect at the relevant time. It is true that Mr. Weekley almost certainly suffers from paranoid schizophrenia, but there is nothing in the report that explains what that is, why it would make him act on delusions, and, most important, how Mr. Weekley's medical condition fit with the applicable legal standard. Without such supporting material, it is not easy to make an accurate prediction about the effect that Dr. Parwatikar's report or testimony would have had on the jury.

2. We find it significant that Mr. Weekley offers no additional evidence as to his competence at the time of the offense, thus distinguishing the present case from Hill v. Lockhart, 28 F.3d 832 (8th Cir. 1994), cert. denied, 115 S. Ct. 778 (1995). In that case, the petitioner introduced records of his previous treatment for mental illness that had not been discovered by his counsel and that contained matters of direct relevance to an insanity defense that was in fact pursued at trial. Id. at 842, 845-46. In contrast, in this case Mr. Weekley makes no showing whatever that his medical history was not properly reconstructed by

the doctors who examined him or that it was not adequately described in the doctors' reports to which counsel had access.

3.  There was some evidence that contradicted Dr. Parwatikar's conclusion.  Dr. Corales's report or testimony to the effect that he was unable to determine Mr. Weekley's condition at the time of the murder could have served at least partially to undermine whatever effect Dr. Parwatikar's report or testimony would have had on the jury.

4.  Missouri law puts some formidable and carefully wrought impediments in the way of a defendant wishing to be relieved from the responsibility for his or her acts on the ground of mental disease or defect.  First of all, the burden is on the defendant to prove that he or she is not responsible for his or her conduct. Mo. Ann. Stat. § 552.030.6 provides, moreover, that "[a]ll persons are presumed to be free of mental disease or defect excluding responsibility for their conduct."  This presumption is conclusive in the absence of evidence to the contrary and does "not disappear" upon the introduction of evidence to the contrary.  See id. Indeed, the statute provides that the presumption "alone [is] sufficient to take that issue to the trier of fact."  See id. In other words, a Missouri jury may find a person free of absolving mental defect even if all the expert testimony is to the contrary.

5.  If Mr. Weekley had been tried in the way that we are required to hypothesize, there would have been four possible outcomes:  The jury could have rejected the insanity defense and sentenced him to life; it could have rejected the defense but been unable to decide on punishment; it could have found for Mr. Weekley on his insanity plea, whereupon he would have been indefinitely committed to a mental institution; or it could have rejected the insanity defense and sentenced Mr. Weekley to less than a life term.  We see no rational way of choosing among these

possibilities. We note, moreover, that the first two putative outcomes are the same as what actually occurred in Mr. Weekley's trial and that the third, for all that we know, could well have turned into their near-equivalent, because Mr. Weekley might have spent the rest of his life in a mental institution. We cannot see how it is possible to conclude that the fourth of the hypothesized outcomes is more likely than any of the others.

6. We note that, while pleading in the alternative is certainly legally permissible, and among lawyers does not come encumbered with a presumption of double-talk, there is much respectable opinion to the effect that jurors are put off by it and regard it with suspicion. In fact, there is considerable empirical evidence that insanity pleas in and of themselves are not received favorably by jurors. See, e.g., C. Boehnert, Characteristics of Successful and Unsuccessful Insanity Pleas, 13 Law and Human Behavior 31, 34, 36-37 (1989).

7. Finally, we call attention to some difficulties that an insanity plea in this particular case would likely have encountered even if the jury had been otherwise receptive to or neutral with respect to one. We have read the trial transcript with great care, and it is clear from that reading that a reasonable jury could have concluded that Mr. Weekley had been planning to kill his wife and himself for some time. His own children testified that he asked them shortly before the shooting what they would do if something happened to him and their mother; he made arrangements at a bank to have his money accessible to his son; and there was evidence that he furtively took the murder weapon from the trunk of his car when he thought that no one was looking. While people with delusions are certainly capable of doing these things, actions like these are hard to square with those of someone who, in the words of the relevant statute (and of Dr. Parwatikar), "does not know or appreciate the nature [or] quality ... of his conduct."

See Mo. Ann. Stat. § 552.030.1. It is true that Dr. Parwatikar also said that in his opinion Mr. Weekley "did not," closely tracking the words of the statute in effect at the relevant time, "know ... the wrongfulness of his conduct and, thus, he was incapable of conforming his conduct to the requirements of the law." See id. Dr. Parwatikar said as well that he thought Mr. Weekley was acting on delusions that his wife was unfaithful. But it is wrongful to kill an unfaithful wife, and Dr. Parwatikar did not say why Mr. Weekley did not know what he was doing was wrong. In other words, Mr. Weekley's acts are certainly consistent with someone who was suffering from delusions but not necessarily with someone who did not know that his act was wrong.

In sum, we see nothing in this record that would allow us to conclude that a different result in Mr. Weekley's trial would have been reasonably probable had his counsel pursued the course that Mr. Weekley says he should have. That being the case, we reverse the judgment of the district court.

HENLEY, Senior Circuit Judge, with whom RICHARD S. ARNOLD, Chief Judge, McMILLIAN, LOKEN and MURPHY, Circuit Judges, join, concurring and dissenting.

Agreeing, as I must, with the majority that Weekley is not entitled to habeas corpus relief on his due process and incompetency claims, I concur in Part I of the majority opinion. However, I disagree with its holding that Weekley is not entitled to relief on his ineffective assistance of counsel claim regarding withdrawal of his insanity plea, and thus dissent as to Part II of the majority opinion. Counsel's performance appears to me to have been both deficient and prejudicial to Weekley. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

**Performance**

As to the performance component of the <u>Strickland</u> test, the majority holds that "counsel's intention [] to protect Mr. Weekley from an indeterminate sentence in a mental institution" was a reasonable trial strategy. Slip op. at 3-4. The majority recognizes that the strategy would be unreasonable if Weekley had been opposed to it or had not been informed of his pleading options, and that at the evidentiary hearing in district court Weekley testified that counsel had not explained his options and had coerced him into withdrawing his insanity plea. The majority also recognizes that the district court did not "entirely" believe counsel's testimony that it was Weekley who insisted on withdrawing the insanity plea. <u>Id.</u> at 3. However, critical of the district court's credibility findings, the majority goes on to make its own findings, crediting counsel's testimony and discrediting Weekley's testimony.

Although the district court did not expressly resolve all disputes in the testimony,[1] it certainly did not credit counsel's

---

[1]For example, Weekley testified that counsel coerced him into withdrawing the insanity plea by telling him that a client who had been acquitted by reason of insanity had committed suicide while in a mental hospital. Counsel did not deny that one of his insanity acquittees had committed suicide and that Weekley had known about the incident and had been influenced by it. However, counsel denied telling Weekley about it, claiming "somebody, I believe it was one of the doctors," told Weekley. Although the district court noted that in an undated letter to counsel Weekley had previously claimed that counsel had told him about the incident, the court did not expressly resolve the dispute.

Certainly, if counsel coerced a client into withdrawing an insanity plea, counsel's performance would be professionally unreasonable. <u>Bouchillon v. Collins</u>, 907 F.2d 589, 596 (5th Cir. 1990) (counsel's performance unreasonable where he failed to investigate insanity defense and "persuaded" defendant into abandoning defense by telling him that juries reject defense despite expert testimony); <u>cf.</u> <u>Thomas v. Lockhart</u>, 738 F.2d 304, 309 (8th Cir. 1984) (counsel's performance unreasonable where he "persuaded" defendant to plead guilty by giving him impression that "a trial would be an exercise in futility" because of racial

-10-

testimony that he had informed Weekley of his options and that Weekley chose to withdraw the insanity defense.  To the contrary, the district court discredited counsel's testimony and credited Weekley's testimony, finding as a matter of fact that it was counsel, not Weekley, who made the decision to withdraw the insanity plea.  The court held:

> Trial counsel fell below the standard of reasonably competent representation of his client by deciding when he was first hired that the matter would be tried under a plea of not guilty and failing to take into account information that later came to his attention concerning the mental state of his client indicating that the client had a mental disease or defect.

Weekley v. Jones, No. 4:88-CV-1602, slip op. at 54-55 (E.D. Mo. Mar. 15, 1994).[2]

In support of this holding, throughout its 60-page opinion, the district court indicated that it was counsel, not Weekley, who decided to withdraw the insanity plea and proceed on a straight not guilty plea.  For example, the court stated:

> --It is apparent that from the very beginning of his employment [counsel] had planned to try the case upon a plea of not guilty.  Id. at 42.
>
> --Underlying trial counsel's decision to withdraw the plea of not guilty by reason of insanity and to try the case on the plea of not guilty was counsel's decision from the very beginning that this was a case to be tried [on a straight not guilty plea].  Id. at 52.
>
> --[Counsel] appears to have made up his mind from the very beginning that the case was to be tried under a plea

---

prejudice).

[2]The district court adopted the report and recommendation of a magistrate judge.

of not guilty and closed his mind to any alternative to that position . . . . Id. at 54.

The district court believed it was "apparent" that counsel had made up his mind from the very beginning to withdraw the insanity defense because counsel had not, among other things, investigated Weekley's psychiatric history, "in spite of the continuous and consistent diagnosis of every doctor who had seen [Weekley] that [he] was a schizophrenic, suffering from paranoia." Id. at 53.

In addition, the majority mischaracterizes Weekley's testimony at the evidentiary hearing as "late-blooming." Slip op. at 5. Although at the change of plea hearing, Weekley eventually told the court that he understood his pleading options and that he was withdrawing the plea voluntarily, his statement came only after the following exchange:

> COURT: Now, do you want to withdraw the defense of mental disease or defect which excludes responsibility, Mr. Weekley?
>
> COUNSEL: Judge, he may not understand all those legal terms. May I ask him this way?
>
> COURT: Certainly.
>
> COUNSEL: Do you understand, Mr. Weekley, that when we withdraw and if we withdraw the Plea of Not Guilty by Reason of Mental Illness or Disease or Capacity, we are not entering a Plea of Guilty. We are going to proceed to trial on your Plea of Not Guilty that you did not slay your wife, that you did not commit Murder in the Second Degree, do you understand that?
>
> WEEKLEY: Yeah.
>
> COUNSEL: And that's what we discussed and that's what you wanted to do, isn't that correct?
>
> WEEKLY: Well.
>
> ****

COURT:  Maybe I could put it a different way than [counsel].  What we're saying to you is do you want to plead insanity in this case; that is, that you weren't responsible for your actions?

WEEKLEY:  I understand what you mean, but I don't know what to say.  I actually don't.

COUNSEL:  I believe we have to rely upon his lawyer in this case and I have to take the full responsibility for the sake of the record.  Mr. Weekley and his wife[3] and myself discussed this matter at length. . . .  [I]t was Mr. Weekley's desire that he invoke the defense of Not Guilty.  Mr. Weekley by the very act of the offense does not remember . . . a lot of things that took place.  He was, you know, seriously injured himself, but he feels that he is not guilty of Manslaughter, is that right?

MRS. WEEKLEY:  For whatever reason.

COUNSEL:  I mean Murder in the Second Degree or Manslaughter or anything.  He does not feel that he killed his wife.

COURT:  Mrs. Weekley, I'll have to rely on you somewhat.  Do you feel that it's your husband's best interest to withdraw this Plea of Not Guilty by Reason of Mental Disease or Defect?

MRS. WEEKLEY:  I don't know. . . .  I do bedpans, you do lawbooks, okay?

****

PROSECUTOR:  Your Honor, I hate to interrupt, but I believe . . . that they can go with also Not Guilty and Not Guilty by Reason of Insanity and combine the two.

COURT:  Yes, you can raise both defenses at the same time if you want or you can raise one or the other.  In other words, you can plead Not Guilty or Not Guilty and Not Guilty by Reason of Mental Disease or Defect or Not Guilty by the Reason of Mental Disease or Defect.

COUNSEL:  Well, the only reason we're here is we thought we were trying him on the grounds that he was Not Guilty.  That's what you hired us for.

---

[3]Weekley married a nurse he met while hospitalized following the shooting.

Trial Transcript at 114-18.  The district court extensively noted the above colloquy, which fully supports its finding that it was counsel, not Weekley, who insisted on withdrawing the insanity plea and proceeding on a straight not guilty plea.

Moreover, counsel's failure to investigate Weekley's mental history is not "beside the point."  Slip op. at 3.  Even assuming that counsel's strategy was based on Weekley's desire to avoid an indefinite commitment in a mental hospital, I agree with the district court's alternative holding that such a strategy was unreasonable in the circumstances.  Although "'[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions[,]'" LaRette v. Delo, 44 F.3d 681, 685 (8th Cir.) (quoting Strickland, 466 U.S. at 691), cert. denied, 116 S. Ct. 246 (1995), it does not necessarily follow that an attorney may blindly follow a client's uncounselled wishes. "The reason lawyers may not 'blindly follow' such commands is that although the decision to use [insanity] evidence in court is for the client, the lawyer first must evaluate potential avenues and advise the client of those offering merit."  Thompson v. Wainwright, 787 F.2d 1447, 1451 (11th Cir. 1986) (internal citation omitted), cert. denied, 481 U.S. 1042 (1987).  "Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories."  Hill v. Lockhart, 28 F.3d 832, 837 (8th Cir. 1994) (internal quotation omitted), cert. denied, 115 S. Ct. 778 (1995).  We have observed that "strategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel."  Kenley v. Armontrout, 937 F.2d 1298, 1304 (8th Cir.), cert. denied, 502 U.S. 964 (1991).

It is undisputed that counsel did not obtain, review, or even request records of Weekley's repeated hospitalizations for paranoid ideations directed towards his wife, which I find unreasonable

-14-

given counsel's testimony that a psychotic episode would be a significant factor in deciding whether to present an insanity defense. I also find surprising counsel's admission that he took no steps to ensure that Weekley understood the consequences of withdrawing the insanity plea and proceeding on a straight not guilty plea. To me, counsel's "explanation that he did not investigate . . . because of [Weekley's] request," or attempt to ensure that Weekley understood the consequences of the various pleas, is "especially disturbing," because counsel was aware of Weekley's "mental difficulties." Thompson, 787 F.2d at 1451. Even though Dr. Parwatikar concluded that Weekley, having been medicated, was competent to stand trial, he nonetheless reported that Weekley had a "thinking disorder . . . complicated by his borderline mental retardation which ma[de] it difficult for him to use proper judgment." It has been held that "[a]n attorney has expanded duties when representing a client whose condition prevents him from exercising proper judgment." Id.

**Prejudice**

The majority also concludes that even if counsel had performed deficiently, Weekley cannot prevail because he has not shown that the performance prejudiced the outcome of the trial. I disagree.

1. The majority believes that it cannot make an "accurate prediction" about the effect of Dr. Parwatikar's report on the jury, characterizing the report as "curt, laconic, and conclusory." Slip op. at 6. The majority mischaracterizes the report. The report did not "only" state that "Mr. Weekley was suffering from a mental disease or defect at the time of the alleged crime which made him act on his delusions against his wife" and "end[] with boilerplate that more or less parrots the statement of insanity." Id. Rather, the seven-page single-spaced typewritten report details, among other things, Weekley's psychiatric, family and social history and the results of physical, mental status, and

-15-

psychological examinations.  Moreover, Dr. Parwatikar discusses why he believed Weekley was insane at the time of the offense.  I set forth below some relevant portions of the November 4, 1978 report:

## II.  PAST PSYCHIATRIC HISTORY

Mr. Weekley has been admitted several times for psychiatric illness dating back to March 4, 1973.  At that time he was an inpatient in St. Vincent's Hospital in St. Louis, Missouri.  <u>Reports indicate that he was acutely agitated and quite paranoid, paranoid ideas being directed toward his wife.  He felt that she was having multiple affairs and had hired two gangs to kill him.</u>  He was placed on medication and was subsequently discharged to his wife.  Later on, he had admissions to Farmington State hospital in 1976 and 1977 and also was treated on an out-patient basis at the V.A. Hospital in Poplar Bluff and at the Malcolm Bliss Mental Health Center in St. Louis.  <u>During most of his hospitalizations, he exhibited paranoid ideations, hallucinations and delusions, and at times had threatened to kill his wife or himself.  Most of his readmissions were precipitated by him not taking his prescribed medication.</u>

**\*\*\*\***

## V.  MENTAL STATUS EXAMINATION

**\*\*\*\***

**Thought Content:**  When asked to describe how he ended up at Farmington State Hospital, Mr. Weekley stated, "They told me I killed my wife. . . .  I don't remember anything."  When asked to recall whatever he could during that period of time, he stated that just prior to this incident he was thinking about going to St. Vincent's Hospital because he was getting very nervous.  In fact, he was so nervous that he had taken a trip to Arkansas without any reason and was coming back.  When asked to describe his nervousness . . ., he stated, "I was just pacing around.  I was nervous, shaky all over."  When asked to describe his illness in the past, he stated that he had been to St. Vincent's Hospital in 1973 and, although he does not remember all the circumstances surrounding the hospital admissions, he stated that his mom had told him that he was constantly walking, pacing and crying very easily.  <u>He also readily admitted that he always thought that his wife was running around with his best friend.  He also said that at one point he could see</u>

-16-

rat poison in his oatmeal, and he told her son, "She was trying to get little green men to put acid in my shoes.". . . When asked how he was able to get the gun, he stated . . . he does not remember . . . how he got hold of it. . . . When asked how he was able to get better from his sickness, he stated that medication always made him feel good very quickly and he was able to start feeling better. When asked why he discontinued medication, he stated that after discharge, it would be either too far for him to go to the outpatient clinic or nobody would worry whether he took medication or not. When asked how he feels right now, he stated, "I don't believe I did this. I really loved her. I miss her. Even my family tells me I must have been sick to have done that. I'm going to take my medication regularly now and I'm going to get rid of all those guns. . . ."

**Insight and Judgment:** . . . He states that he was very sick and was not on medication, thus he does not remember anything that went on at that time. . . . He does not hesitate to admit that he felt very paranoid about his wife, particularly her trying to kill him as well as her running around with other people. He also admits to the fact that whenever he was sick, he used to feel that she was doing all these things to him. . . .


## VI.   PSYCHOLOGICAL TEST

Psychological tests . . . indicate that he is functioning at a borderline retarded range of intelligence, his IQ being 71 . . . [and has] little ability to cope with daily demands or to handle his emotions.

****

## IX.   DIAGNOSIS

295.35 Schizophrenia, Paranoid Type, in remission
310.4  Borderline Mental Retardation with some organic impairment in verbal areas
907.1 Post gunshot wound injuries with complications (on treatment)

## X. DISCUSSION

This 40 year old . . . male currently does not show symptoms of psychosis except inappropriateness of affect and passive delusions in the sense that <u>he still believes that his wife was trying to poison him as well as running around with his best friend.</u> Delusions [are] ideas which are not in keeping with one's cultural realities, thus these thoughts must be considered as delusions because if his wife were [trying] to get rid of him, she had ample opportunities to do so. . . .

The medication has helped him get back into reality and look at the situation much more objectively. Although I have made the diagnosis of schizophrenia, paranoid type, it appears that his moods fluctuate quite frequently between agressivity, paranoid thinking and then depression, which is more or less indicative of manic-depressive or schizo-affective schizophrenia. <u>The past history indicates that has been going through this particular disorder quite periodically, particularly when he is not taking his medication regularly and has shown consistently the same symptomalogy, including the paranoid ideation toward his wife. His thinking disorder is also complicated by his borderline mental retardation which makes it difficult for him to use proper judgment in reality</u>. . . .

****

<u>Since this condition has been long-standing and schizophreni[a] cannot be "cured" but only arrested with ongoing medication, it is my opinion that he was suffering from a mental disease or defect at the time of the alleged crime which made him act on his delusions against his wife</u>. . . .

****

## XI. FINDINGS

1) Mr. James Weekley has a mental disease or defect within the meaning of Section 552.010.
2) At this time, having been treated . . ., he has the capacity to understand the proceedings against him and to assist in his own defense.
3)<u>Reviewing the history as well as previous exacerbations of his mental illness and the delusional patterns, it is my opinion that at the time of the alleged criminal conduct he did not know or appreciate the nature, quality or wrongfulness of his conduct and, thus, he was incapable of conforming his conduct to the requirements of the law.</u>

-18-

4)Considering his partially improved mental condition and need to stabilize his medications as well as reconstruction of his jaw to prevent further physical deterioration, he needs to be hospitalized pending further proceedings.

## XII.   RECOMMENDATIONS

****

2) It is recommended that he be considered not guilty by reason of insanity and committed to the Department of Mental Health for treatment and rehabilitation.

(Emphasis added.)

In sum, Weekley was a man who since 1973 had been repeatedly hospitalized following paranoid delusions and hallucinations that his wife was trying to kill him.  Although while hospitalized, he would improve with medication which "helped him get back to reality," on discharge Weekley would discontinue his medication, causing the return of the delusions and hallucinations.  Weekley's delusions--including his belief that his wife had sent "little green men" to kill him--were "not in keeping with [] reality."  In killing his wife, Weekley acted on his delusions and his schizophrenia and borderline mental retardation prevented him from "know[ing] or appreciat[ing] the nature, quality, or wrongfulness of his conduct, and . . . conforming his conduct to the requirements of the law."

Nor do I believe that we have to "make an accurate prediction" about the effect of the report on the jury.  Slip op. at 6.  As the majority recognizes:

[d]espite the use of the word "probability" in th[e Strickland] formulation, the Supreme Court has explained that a reviewing court does not have to believe that an alternative strategy would more likely than not have succeeded.   Instead, the Court indicated that a

> "reasonable probability is a probability sufficient to undermine confidence in the outcome."

Id. at 5 (quoting Strickland, 466 U.S. at 694). Even if counsel only had introduced Dr. Parwatikar's report, my confidence in the outcome of the trial is undermined. Although the majority hypothesizes that another doctor might have found Weekley sane at the time of the offense, I do not think that is a reasonable hypothesis given that Weekley's paranoid schizophrenia was long-standing and incurable. See Hill v. Lockhart, 28 F.3d at 841 (psychologist explained "because [defendant's] medical records suggested a history of chronic paranoid schizophrenia, it would be reasonable to assume that [he] has been to some degree [a] paranoid schizophrenic for a long time, including the period of the events in question") (internal quotation omitted).

2. The majority faults Weekley for not offering additional evidence of his insanity at the time of the offense and distinguishes this case from Hill. In Hill, the defendant was convicted for the murder of a state game and fish commissioner and presented an insanity defense based on paranoid schizophrenia manifested by a violent and uncontrollable reaction "to a person in uniform." Id. As I read Hill, while the trial attorneys requested records of Hill's previous treatment for paranoid schizophrenia, they "did not obtain all of his medical records before trial and [] never introduced the medical records that they did have." Id. However, in large part, this court found that the attorneys' performance was not deficient because "much of the most useful information included in those records was alluded to in the testimony of the clinical psychologist who testified for the defense." Id. Indeed, the only part of the guilt phase performance that the court found deficient was the attorneys' failure to question the psychologist regarding information in the records and his report indicating that Hill had stopped taking

-20-

anti-psychotic medication several weeks before the murder.  The court believed that an insanity defense based on failure to take medication was an "obvious one" and "more believable than the one actually presented."  Id. at 842.[4]

While it is true that Weekley did not have a second evaluation indicating he was insane at the time of the crime, in Hill the attorneys had the defendant examined by a second mental health professional because they needed "to find some expert testimony to refute the conclusions of the court-ordered evaluation[,]" which found Hill sane at the time of the offense.  Id. at 841 (internal quotation omitted).  In the present case, Dr. Parwatikar examined Weekley pursuant to court order, and, as counsel conceded, the doctor's report would be "strong [and] persuasive" evidence for the jury because counsel could tell the jury, "Here's somebody I didn't hire."

3.  Dr. Corales' report does not undermine Dr. Parwatikar's opinion that Weekley was insane at the time of the offense.  Dr. Corales noted Weekley's repeated hospitalizations dating back to 1973 for "paranoid ideations which were directed towards his wife, who he felt was having multiple affairs and [had] hired two gangs to kill him" and that Weekley reported seeing "small people, who he had seen in the past as they were putting acid in his boots and wanted to kill him."  Although Dr. Corales found that Weekley was incompetent to stand trial and diagnosed him as a paranoid schizophrenic, he did not comment on the question whether Weekley was insane at the time of the offense because of "lack of supporting material."  In contrast, Dr. Parwatikar found Weekley--

--------

[4]In the present case, as the district court noted, "[a]t least insanity would have given a reason for what occurred. [Weekley's] testimony gave no reason, except that he blacked out." Weekley v. Jones, No. 4:88-CV-1602, slip op. at 52.  Indeed, counsel admitted that insanity was the only viable defense that Weekley had.

having been medicated--competent to stand trial, but--based on his review of the "ward reports, previous history, medical records, psychological testing, [and] personal interviews"--concluded that Weekley was insane at the time of the offense.

4. Even though the jury could consider the statutory presumption of sanity, at a minimum, had counsel introduced Dr. Parwatikar's report detailing Weekley's long-standing paranoid schizophrenia, I am not confident that the jury would have voted to convict.

5. The majority sees no rational way of choosing among four possible outcomes of the trial had evidence of Weekley's mental history been introduced. I am not aware that Strickland requires this court to predict which outcome would be more likely. In addition, although the majority believes, apparently as a practical matter, that an indefinite commitment to a mental hospital is the "near equivalent" of a life sentence, slip op. at 8, the Supreme Court has held that "confinement in prison is punitive and hence more onerous than confinement in a mental hospital[.]" Heller v. Doe, 113 S. Ct. 2637, 2645 (1993). See also Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("[a] State, pursuant to its police power, may of course imprison convicted criminals for the purposes of deterrence and retribution" but has no punitive interest in an insanity acquittee, who was "exempted [] from criminal responsibility").

6. It may well be that juries are "put off" by insanity pleas. Slip op. at 8. However, a "bias against a claim of insanity does not justify a failure to investigate" or present the defense if the circumstances so warrant. Bouchillon v. Collins, 907 F.2d 589, 596 n.24 (5th Cir. 1990). In fact, the study cited by the majority, Boehnert, Characteristics of Successful and Unsuccessful Insanity Pleas, 13 Law and Human Behavior 31 (1989),

suggests that if counsel had presented an insanity defense Weekley might have been successful. The study, which compared insanity acquittees with "unsuccessful attemptees," found "[s]ignificantly more successful acquittees had been found incompetent to stand trial at an earlier stage in their trial" and were "more likely to have lower intelligence and more impaired reality testing" than the attemptees. Id. at 36.

7. I do not deny that the state may have produced some evidence from which a reasonable jury could have inferred that Weekley was planning to kill his wife. However, the fact that there is evidence tending to support the jury's verdict does not defeat Weekley's claim that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In Kyles v. Whitley, 115 S. Ct. 1555, 1566 (1995), the Supreme Court made clear that the "reasonable probability" standard "is not a sufficiency of evidence test."[5]

In the present case, evidence that Weekley had planned to kill his wife is consistent with his long-standing history of paranoid thoughts and threats to his wife which resulted in repeated hospitalizations dating back to 1973. This is not, as the majority suggests, a case of a domestic shooting by a jealous husband who knew what he was doing and that it was wrong. Although it is true that Weekley believed that his wife was having affairs, he also believed that she was trying to kill him by having "little green men" put acid in his shoes. In these circumstances, I am not confident that the jury would conclude that Weekley knew what he was doing or appreciated the wrongfulness of his conduct.

_____

[5]Although Kyles concerns the "reasonable probability" standard in the context of a suppression of evidence claim, the Court made clear that the standard was modelled after the Strickland prejudice standard. 115 S. Ct. at 1566.

For the foregoing reasons, I would affirm the district court's judgment granting Weekley's petition for a writ of habeas corpus on the ground that he was denied effective assistance of counsel in regard to the withdrawal of his insanity plea.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.