# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2091

_____

|  |  |  |
|---|---|---|
| Michael Eugene Blackwell, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Leonard Graves, Warden, Iowa | * | Southern District of Iowa. |
| State Penitentiary, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 12, 2003

Filed: November 12, 2003
_____

Before HANSEN,[1] Chief Judge, LOKEN, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

Michael Eugene Blackwell was found guilty in Iowa state court of two counts of murder and one count of burglary. After exhausting his direct and collateral appeals in Iowa state courts, Blackwell filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Iowa. In his petition,

_____

[1] The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

Blackwell argued that the Iowa Court of Appeals' rejection of his ineffective assistance of counsel claim was an unreasonable application of clearly established federal law. The district court[2] disagreed and denied his writ. We affirm.

## I.

On January 29, 1991, Blackwell brutally murdered his girlfriend and her mother in his girlfriend's home. Blackwell then proceeded to hold his girlfriend's infant son hostage. At 1:30 the next morning, after taking some pills, Blackwell handed the baby to police and surrendered. Authorities took Blackwell to a hospital where medical personnel pumped his stomach.[3]

During the hostage standoff, Blackwell exhibited signs of mental illness and impairment due to intoxicants. For example, Blackwell's uncle informed one of the officers at the scene that Blackwell had been drinking vodka all day. Blackwell behaved erratically while the police sought his surrender. One officer present, Kelley Willis, stated spontaneously about Blackwell, "This guy is nuts," and noted that he would just "go off on his own." Various friends and family members later testified that Blackwell did not sound like himself, was talking in two different voices, and "not in his right mind."

Dr. Margaret Shin, a psychiatrist, evaluated Blackwell soon after his arrest. Her finding initially was that "of antisocial personality disorder, and also adjustment disorder with depressed mood." Later, on March 1, 1992, Dr. Shin changed her report

---

[2] The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

[3] Based on a blood-alcohol test obtained after Blackwell was taken into custody, .159 was determined to be his probable blood alcohol level at the time of the homicides. A police negotiator observed that Blackwell spoke in a "slurred fashion" while the officers tried to get him to come out of the victim's house.

to state that her "diagnostic impression [was] a delusional paranoid disorder." However, she also noted that Blackwell continued to suffer from an antisocial personality disorder and was "somewhat malingering." It is not clear from the record whether Blackwell's court-appointed trial counsel, John Wellman, knew about Dr. Shin's report prior to trial.

After Wellman was appointed, he requested a psychiatric evaluation from Dr. Michael Taylor, a Des Moines psychiatrist. After meeting with Blackwell over a period of months, Taylor reportedly concluded that Blackwell "was an angry young man and had perceived events that he had been mistreated and his anger festered and developed into rage and this was the action of somebody who was just very, very angry . . . ." Because he concluded that Taylor's testimony would be unhelpful to his trial strategy, Wellman did not file an affirmative defense on mental-health grounds or diminished capacity. The case then proceeded to a bench trial, and Blackwell was found guilty of two counts of first-degree murder and one count of aggravated burglary.

After exhausting his direct appeals, Blackwell filed an Application for Post-Conviction Relief ("PCR"), which the Iowa District Court for Polk County denied. Blackwell then appealed his PCR to the Iowa Court of Appeals, arguing–among other things–that Wellman's failure to develop mental-health and diminished- responsibility defenses constituted ineffective assistance of counsel in violation of the Sixth Amendment. The Iowa Court of Appeals denied this claim, concluding that "Wellman's decision not to present intoxication, insanity, or diminished responsibility theories was a reasonable, strategic choice."

Blackwell then filed a habeas corpus petition. The district court denied habeas corpus relief, concluding that the "Iowa courts' decision on petitioner's claim was not contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court." Blackwell appealed.

## II.

On appeal Blackwell argues that the Iowa Court of Appeals' rejection of his ineffective assistance of counsel claim was an unreasonable application of clearly established federal law. Because ineffectiveness of counsel is a mixed question of law and fact, we review "the district court's legal conclusions de novo and its findings of fact for clear error." *Hoon v. Iowa*, 313 F.3d 1058, 1060 (8th Cir. 2002); *see also Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003).[4]

The scope of our review of the state-court determination is very narrow. As relevant for this case, we will overturn a claim adjudicated on the merits in a state court proceeding only if the adjudication of the claim resulted in a decision that involved an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[5] A state court decision is considered an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case . . . ." *Williams v. Taylor*, 529 U.S. 362, 407–08 (2000). However, we may not reverse a state court's decision simply because we conclude that the court incorrectly applied the clearly established federal law. *Id.* at 409–11. Rather we must conclude both that the law was applied incorrectly and that the law was applied in an "objectively unreasonable" manner. *See Wiggins v. Smith*, __ U.S. __, __, 123 S.Ct. 2527, 2535 (2003).

---

[4] Moreover, the "state court's factual findings are presumed correct." *Tunstall v. Hopkins*, 306 F.3d 601, 605 (8th Cir. 2002). Blackwell therefore has "the burden to rebut this presumption by clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)).

[5] *See also* 28 U.S.C. § 2254(d)(2) (providing an alternative ground for granting § 2254 relief, which is not relevant in this case).

III.

Blackwell alleges that his trial counsel's failure to develop mental-health and diminished-responsibility defenses constituted ineffective assistance of counsel in violation of the Sixth Amendment.[6] The right to effective counsel is a clearly established federal right. *See Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* test, in order to demonstrate ineffective assistance of counsel, Blackwell must show that: (1) his "counsel's performance was lacking–so lacking in fact that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment–and (2) that the deficient performance prejudiced the defense." *Brown v. United States*, 311 F.3d 875, 877 (8th Cir. 2002) (citing *Strickland*, 466 U.S. at 687). Accordingly, we must determine whether the Iowa Court of Appeals applied the *Strickland* standard unreasonably to the facts of this case.

After citing the Iowa Supreme Court decisions that set forth the *Strickland* standard, the Iowa Court of Appeals held the following:

> "Selection of the primary theory or theories of defense is a tactical matter." *Schrier v. State*, 347 N.W.2d 657, 663 (Iowa 1984). Counsel's choice whether and which evidence to present is also a strategic matter. We must determine whether Wellman's conduct was reasonable. . . . We conclude Wellman's decision not to present intoxication, insanity, or diminished responsibility theories was a reasonable, strategic choice.
>
> . . .
>
> We note Blackwell fails to establish a reasonable probability [that] the outcome of the case would have been different had Wellman presented witnesses or theories of intoxication, insanity, or diminished responsibility. . . . The [Iowa] district court considered Blackwell's assertions [that] he did not have the intent to commit first-degree murder. In its verdict, the court stated "[s]uch contentions [that

---

[6] We analyze Blackwell's claim on appeal based upon his Certificate of Appealability. *See Jackson v. Gammon*, 195 F.3d 349, 353 (8th Cir. 1999).

Blackwell did not have the requisite state of mind to commit first-degree murder] are wholly without merit." In addition, evidence of Blackwell's blood alcohol content was before the court. We find Blackwell was not prejudiced by Wellman's conduct at trial. We affirm on this issue.

*Blackwell v. Iowa*, No. 7-668/96-2086, slip op. at 5–7 (Iowa Ct. App. Apr. 24, 1998) *aff'g Blackwell v. Iowa*, No. CE 29477 (Iowa Dist. Ct. Polk Aug. 30, 1996); App. at 297–99. While it is possible that such a determination was incorrect, we cannot say that such a determination is objectively unreasonable under *Strickland* because Wellman's performance does not meet the first factor of *Strickland.* In order to establish that Wellman's representation was ineffective under *Strickland*, Blackwell must show that Wellman's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Blackwell's allegations–upon an examination of the record and the totality of the circumstances–however, cannot meet this heavy burden.

Blackwell first argues that Wellman should have presented a mental-health or diminished-capacity defense. Wellman did initially pursue such affirmative defenses. Wellman engaged Dr. Michael Taylor, who, according to Wellman, was one of the "most qualified and probably the best [forensic psychiatrist] witness." Dr. Taylor met with Blackwell over the course of several months. However, Wellman concluded that he would not call Dr. Taylor "because his evaluation of [Blackwell] was not helpful. . . . He would have established for the state premeditation, deliberation and intent to kill." Wellman also concluded that Dr. Taylor's evaluation would ruin any chances of establishing a mental-health or diminished-capacity defense.

As a result, Wellman did not file such defenses. Such a decision was a reasonable tactical decision under the circumstances. *Strickland*, 466 U.S. at 689. Had Wellman filed a mental-health or diminished-responsibility defense and attempted to call another expert, the State would have been able to call Dr. Taylor to testify against

-6-

Blackwell. *State v. Hardin*, 569 N.W.2d 517, 519 (Iowa Ct. App. 1997) (no physician-patient privilege when a defendant gives notice of the defense of insanity or diminished capacity). We cannot say that such a strategy fell below the "objective standard of reasonableness." *See Weekley v. Jones*, 76 F.3d 1459, 1462 (8th Cir. 1996) (en banc) (finding counsel was not ineffective for declining to have his client examined by a second psychiatrist because if that psychiatrist had found him mentally sound at the time he committed the offense, it could have done considerable damage to his case).

Blackwell also argues that Wellman should have had Dr. Taylor prepare a report on his mental state. However, not having Dr. Taylor prepare a report was not only reasonable under the circumstances, it was wise. As Wellman noted, if Dr. Taylor had prepared the report, the prosecution would have had an exhibit to use against Blackwell. Again, such a tactical decision is objectively reasonable. *See id.*

Finally, Blackwell alleges that Wellman was ineffective because he failed to uncover Dr. Shin's report or–if he did–to use Dr. Shin's report at trial. However, it is not clear from the record whether Wellman knew that the Shin report existed. Certainly, a perfect attorney would have, under the circumstances, asked his client whether a psychiatrist had already interviewed him, but it is also reasonable to expect Blackwell to offer his counsel this information. *See Strickland*, 466 U.S. at 691 (noting that counsel's choices regarding trial strategy often are based "on information supplied by the defendant"). Because the *Strickland* standard is based on adequate representation, and not perfection, this omission was not ineffective.

## IV.

Thus, because we find Wellman's performance fell within *Strickland's* range of constitutional competency and effectiveness, we cannot say that the Iowa Court of Appeals' application of *Strickland* to the facts of this case was objectively unreasonable. Accordingly, the opinion of the district court is affirmed.

_____